**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

**BEFORE:  THE HONORABLE MARK A. BARNETT, CHIEF JUDGE**

| | |
|---|---|
| GREENTECH ENERGY SOLUTIONS, INC.,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)  Court No. 23-00118<br>)<br>)<br>)<br>)<br>) |

## ORDER

Upon consideration of defendant's Motion to Dismiss, and all other papers and proceedings herein, it is hereby

ORDERED that the defendants' motion is granted, and it is further

ORDERED that this case is dismissed.


_____
The Honorable Mark A. Barnett, Chief Judge
Dated: _____, 2023          United States Court of International Trade
New York, New York

**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

**BEFORE:  THE HONORABLE MARK A. BARNETT, CHIEF JUDGE**

|  |  |  |
|---|---|---|
| GREENTECH ENERGY SOLUTIONS, INC., | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Court No. 23-00118 |
| UNITED STATES, | ) ) | PUBLIC VERSION |
| Defendant. | ) ) ) | |

## <u>DEFENDANT'S MOTION TO DISMISS</u>

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. MCCARTHY
Director

OF COUNSEL:

REGINALD T. BLADES, JR.
Assistant Director

SPENCER NEFF
Attorney
U.S. Department of Commerce
Office of Chief Counsel for Trade
Enforcement & Compliance

EMMA E. BOND
Trial Attorney
U.S. Department of Justice
Commercial Litigation Branch - Civil
Division

ALEXANDRA KHREBTUKOVA
Senior Attorney
U.S. Customs and Border Protection
Office of the Chief Counsel
International Trade Litigation

P.O. Box 480
Ben Franklin Station
Washington, DC 20044
Tel: (202) 305-2034

September 7, 2023

*Attorneys for Defendant United States*

## TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................................... i

TABLE OF AUTHORITIES ................................................................................... iii

DEFENDANT'S MOTION TO DISMISS ............................................................... 1

INTRODUCTION .................................................................................................... 1

ISSUES ................................................................................................................... 2

BACKGROUND ...................................................................................................... 2

    I.    In 2012, Commerce Issues Antidumping And Countervailing Duty Orders On Solar Cells From China, Covering Solar Panels And Modules Assembled In Third Countries With Solar Cells From China ...................................................... 2

    II.    Commerce Requires Certifications From Importers And China-Based Exporters Who Claim Their Solar Panels And Modules Do Not Contain Solar Cells From China ............................................................................................................. 4

    III.    In 2019, Greentech Imports Solar Panels And Modules Into The United States ... 7

    IV.    CBP Requests Additional Information ................................................................ 7

    V.    CBP Issues A Form 29 Notice Of Action Requiring Cash Deposits For Antidumping And Countervailing Duties ............................................................ 9

    VI.    Greentech Provides Additional Information To CBP .......................................... 9

    VII.    After Liquidation, Greentech Protests The Application Of Antidumping And Countervailing Duties ..................................................................................... 11

    VIII.    Days After CBP Requests Additional Information In The Pending Protests, Greentech Files This Case Seeking Refund Of Its Cash Deposits And Re-Liquidation Of Its Entries ................................................................................ 12

SUMMARY OF ARGUMENT .............................................................................. 13

ARGUMENT .......................................................................................................... 14

    I.    Standard Of Review .......................................................................................... 14

    II.    Section 1581(a) Is Not Manifestly Inadequate To Adjudicate Challenges To CBP's Application Of The Certification Requirement To Greentech's Entries ... 15

A.      Greentech May Not Invoke Section 1581(i) Jurisdiction For
        Determinations Reviewable Under Other Sections Of Section 1581,
        Unless Greentech Demonstrates That Such Review Is Manifestly
        Inadequate ............................................................................................16

B.      By Challenging The Certification Requirement "As Applied," All Three
        Claims In Greentech's Amended Complaint Challenge CBP's Application
        Of Commerce's Certification Requirement To Greentech's Entries ........17

C.      Judicial Review Pursuant To Section 1581(a) Is Not Manifestly
        Inadequate To Adjudicate Greentech's Challenges To CBP's Application
        Of The Certification Requirement............................................................20

III.    Greentech Has Failed To Exhaust Protest Procedures.........................................23

IV.     Any Challenge To The Certification Requirement Imposed In 2012 Is Untimely
        ..................................................................................................................24

A.      Greentech's Claim Accrued When All Events Necessary To State The
        Claim Have Occurred ..............................................................................25

B.      Greentech's Cause Of Action Challenging Commerce's Certification
        Requirement Accrued In 2019, At The Latest .........................................25

C.      Greentech Knew Or Should Have Known About The Certification
        Requirement No Later Than 2019, When It Entered The Relevant Solar
        Panels And Modules.................................................................................27

V.      Claim Three Fails To State A Claim Upon Which Relief May Be Granted
        Because The Excessive Fines Cause Does Not Apply To The Remedial
        Antidumping And Countervailing Duty Scheme ................................................30

CONCLUSION...................................................................................................................34

# TABLE OF AUTHORITIES

**CASES**                                                          **PAGE(S)**

*Aireko Constr., LLC v. United States*,
   547 F. Supp. 3d 1350 (Ct. Int'l Trade 2020) ................................................... 18, 22

*Arbaugh v. Y & H Corp.*,
   546 U.S. 500 (2006) ...........................................................................................15

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ...........................................................................................15

*Austin v. United States*,
   509 U.S. 602 (1993) ...........................................................................................31

*Bay Area Laundry and Dry Cleaning Pension Trust Fund v. Ferbar Corp. of Cal.*,
   522 U.S. 192 (1997) ...........................................................................................25

*Belgium v. United States*,
   551 F.3d 1339 (Fed. Cir. 2009) ............................................................... 18, 23, 27

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ...........................................................................................15

*Bell Supply Co., LLC v. United States*,
   888 F.3d 1222 (Fed. Cir. 2018) ...........................................................................3

*C.B. Imports Transamerica Corp. v. United States*,
   35 C.I.T. 1750, 807 F. Supp. 2d 1350 (2011) ....................................................24

*Canadian Solar, Inc. v. United States*,
   918 F.3d 909 (Fed. Cir. 2019) ........................................................................3, 32

*Carbon Activated Corp. v. United States*,
   791 F.3d 1312 (Fed. Cir. 2015) ............................................................... 20, 21, 22

*Cedars-Sinai Med. Ctr. v. Watkins*,
   11 F.3d 1573 (Fed. Cir. 1993) ............................................................................15

*Chaparral Steel Co. v. United States*,
   901 F.2d 109 (Fed. Cir. 1990) ............................................................................31

*Consol. Bearings Co. v. United States,*
   348 F.3d 997 (Fed. Cir. 2003) .................................................................23

*E.I. Du Pont de Nemours & Co. v. United States,*
   8 F.Supp.2d 854 (Ct. Int'l Trade 1998) ......................................................3

*Eberhart v. United States,*
   546 U.S. 12, (2005) ..............................................................................24

*Engage Learning, Inc. v. Salazar,*
   660 F.3d 1346 (Fed. Cir. 2011) .................................................................14

*Env't One Corp. v. United States,*
   627 F. Supp. 3d 1349 (Ct. Int'l Trade 2023) ..............................................17

*F.lli De Cecco Di Filippo Fara S. Martino S.p.A v. United States,*
   216 F.3d 1027 (Fed. Cir. 2000) .................................................................32

*Ford Motor Co. v. United States,*
   811 F.3d 1371 (Fed. Cir. 2016) .................................................................24

*Fujitsu Gen. Am., Inc. v. United States,*
   283 F.3d 1364 (Fed. Cir. 2002) .................................................................16

*Grashoff v. Adams,*
   65 F.4th 910 (7th Cir. 2023) .....................................................................31

*Guangdong Wireking Housewares & Hardware Co., Ltd. v. United States,*
   745 F.3d 1194 (Fed. Cir. 2014) .................................................................31

*Hartford Fire Ins. Co. v. United States,*
   544 F.3d 1289 (Fed. Cir. 2008) ..........................................................16, 17

*Holmes v. United States,*
   657 F.3d 1303 (Fed. Cir. 2011) .................................................................25

*Int'l Custom Prod., Inc. v. United States,*
   467 F.3d 1324 (Fed. Cir. 2006) .................................................................16

*Juancheng Kangtai Chemical Co., Ltd. v. United States,*
   932 F.3d 1321 (Fed. Cir. 2019) ..........................................................17, 21

*Juice Farms, Inc. v. United States,*
   68 F.3d 1344 (Fed. Cir. 1995) .................................................................20

*KYD, Inc. v. United States*,
    607 F.3d 760 (Fed. Cir. 2010) ......................................................31

*Manrique v. United States*,
    581 U.S. 116 (2017) ......................................................................24

*McDonough v. Smith*,
    139 S. Ct. 2149 (2019) ................................................................25

*Miller & Co. v. United States*,
    824 F.2d 961 (Fed. Cir. 1987) ...............................................16, 24

*Mitsubishi Elec. Corp. v. United States*,
    898 F.2d 1577 (Fed. Cir. 1990).....................................................33

*Mitsubishi Elecs. Am., Inc. v. United States*,
    44 F.3d 973 (Fed. Cir. 1994) ..................................................25, 27

*Norcal / Crosetti Foods, Inc. v. United States*,
    963 F.2d 356 (Fed.Cir.1992) .........................................................16

*Norsk Hydro Can., Inc. v. United States*,
    472 F.3d 1347 (Fed. Cir. 2006).............................................14, 17

*NTN Bearing Corp. v. United States*,
    74 F.3d 1204 (Fed.Cir.1995) ........................................................31

*Peer Bearing Co.-Changshan v. United States*,
    35 C.I.T. 1429 (2011)....................................................................29

*Reed v. Goertz*,
    143 S. Ct. 955 (2023) ...................................................................25

*Shinyei Corp. of Am. v. United States*,
    355 F.3d 1297 (Fed. Cir. 2004).....................................................22

*St. Paul Fire & Marine Ins. Co. v. United States*,
    959 F.2d 960 (Fed. Cir. 1992) ......................................................25

*SunPower Corp. v. United States*,
    253 F. Supp. 3d 1275 (Ct. Int'l Trade 2017) ...................................3

*Sunpreme Inc. v. United States*,
    946 F.3d 1318 (Fed. Cir. 2020)....................................................18

*Sunpreme Inc. v. United States*,
    892 F.3d 1186 (Fed. Cir. 2018)..................................................................16, 17, 21

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007) .................................................................................................29

*TR Int'l Trading Co. v. United States*,
    433 F. Supp. 3d 1329 (Ct. Int'l Trade 2020), *aff'd*, 4 F.4th 1363 (Fed. Cir. 2021) ...........18, 21

*United States v. A.N. Deringer, Inc.*,
    593 F.2d 1015 (C.C.P.A. 1979) ...............................................................................20

*United States v. Bajakajian*,
    524 U.S. 321 (1998) .................................................................................................31

*United States v. Commodities Export Co.*,
    972 F.2d 1266 (Fed. Cir. 1992)................................................................................25

*United States v. Viloski*,
    814 F.3d 104 (2d Cir. 2016) .....................................................................................31

## STATUTES

19 U.S.C. § 1484..........................................................................................................27, 30

19 U.S.C. § 1514..................................................................................................16, 20, 22

19 U.S.C. § 1514(a) .............................................................................................17, 21, 22

19 U.S.C. § 1514(a)(2).................................................................................................22

19 U.S.C. § 1514(b) ....................................................................................................18

19 U.S.C. § 1514(c)(3)(A).............................................................................................21

19 U.S.C. § 1515..........................................................................................................16, 21

19 U.S.C. § 1515(c) ........................................................................................................7, 13

19 U.S.C. § 1516a..........................................................................................................16, 22

19 U.S.C. § 1671(a)(1) ....................................................................................................21

19 U.S.C. § 1673..........................................................................................................21

28 U.S.C. § 1581..........................................................................................................16

vi

28 U.S.C. § 1581(a) ..................................................................................................passim

28 U.S.C. § 1581(c) ...............................................................................................16, 22

28 U.S.C. § 1581(i) ..................................................................................................passim

28 U.S.C. § 2636(i) .............................................................................................14, 24, 26

28 U.S.C. § 2637(a) .................................................................................................passim

28 U.S.C. § 2637(d) .......................................................................................................26

S. Rep. No 92-1221 (1972).............................................................................................31

## REGULATIONS

19 C.F.R. § 151.11 ............................................................................................................7

19 C.F.R. § 159.1 (1995)...............................................................................................20

19 C.F.R. § 159.41 ..........................................................................................................18

19 C.F.R. § 159.47 ..........................................................................................................18

19 C.F.R. § 174.24(b)......................................................................................................11

19 C.F.R. § 351.211 ........................................................................................................18

19 C.F.R. § 351.228 ........................................................................................................33

## FEDERAL REGISTER NOTICES

*Notice of Amended Final Determination of Sales at Less Than Fair Value and Antidumping Duty Order: Low Enriched Uranium From France,*
    67 Fed. Reg. 6,680 (Dep't of Commerce, Feb. 13, 2002)......................................................33

*Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, From China: Preliminary Determination of Sales at Less Than Fair Value, Postponement of Final Determination and Affirmative Preliminary Determination of Critical Circumstances,*
    77 Fed Reg. 31,309 (Dep't of Commerce, May 25, 2012)................................................28, 29

*Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, From China: Final Affirmative Countervailing Duty Determination and Final Affirmative Critical Circumstances Determination, (Final CVD Determ. Solar Cells from China),*
    77 Fed. Reg. 63,788 (Dep't of Commerce Oct. 17, 2012), ...............................................passim

*Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled into Modules, from China:*

*Final Determination of Sales at Less Than Fair Value, and Affirmative Final Determination of Critical Circumstances, in Part*, (*Final AD Determ. Solar Cells from China*),
77 Fed. Reg. 63,791 (Dep't of Commerce, Oct. 17, 2012) ...............................................passim

*Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, From China,*
77 Fed. Reg. 73,017 (Dep't of Commerce Dec. 7, 2012).......................................................3

*Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, From China*,
77 Fed. Reg. 73,018 (Dep't of Commerce Dec. 7, 2012).......................................................3

*Sugar from Mexico: Suspension of Countervailing Duty Investigation*,
79 Fed. Reg. 78,044 (Dep't of Commerce, Dec. 29, 2014)....................................................33

*Regulations to Improve Administration and Enforcement of Antidumping and Countervailing Duty Laws*,
85 Fed. Reg. 49,472 (Dep't of Commerce, Aug. 13, 2020) ...................................................33

*Regulations To Improve Administration and Enforcement of Antidumping and Countervailing Duty Laws*,
86 Fed. Reg. 52,363 ( Dep't of Commerce, Sept. 20, 2021)...................................................33

*Crystalline Silicon Photovoltaic Cells & Modules from China*,
USITC Inv. No. 701-TA-481 (U.S. Intern. Trade Comm'n Nov. 1, 2012)............................32

## RULES

Rule 12(b)(1) ...............................................................................................................1, 14

Rule 12(b)(6) ............................................................................................................passim

**DEFENDANT'S MOTION TO DISMISS**

**INTRODUCTION**

Pursuant to Rules 12(b)(1) and 12(b)(6) of the rules of this Court, defendant, the United

States, respectfully requests that the Court dismiss the amended complaint filed by plaintiff,

Greentech Energy Solutions, Inc. (Greentech).  This case arises from antidumping and

countervailing duty investigations of crystalline silicon photovoltaic cells from the People's

Republic of China (China or PRC).  *See Crystalline Silicon Photovoltaic Cells, Whether or Not*

*Assembled into Modules, from China: Final Determination of Sales at Less Than Fair Value,*

*and Affirmative Final Determination of Critical Circumstances, in Part*, (*Final AD Determ.*

*Solar Cells from China*), 77 Fed. Reg. 63,791 (Dep't of Commerce, Oct. 17, 2012), and

accompanying Issues & Decision Mem. at Cmt. 1 (IDM); *Crystalline Silicon Photovoltaic Cells,*

*Whether or Not Assembled Into Modules, From China: Final Affirmative Countervailing Duty*

*Determination and Final Affirmative Critical Circumstances Determination*, (*Final CVD*

*Determ. Solar Cells from China*), 77 Fed. Reg. 63,788 (Dep't of Commerce Oct. 17, 2012), and

accompanying IDM at Cmt. 32.

Both investigations covered the same scope—crystalline silicon photovoltaic cells,

whether or not assembled into modules, from China, including "{m}odules, laminates, and

panels produced in a third-country from cells produced in {China}."  *See, e.g.*, *Final AD Determ.*

*Solar Cells from China*, 77 Fed. Reg. at 63,793.  In light of this scope, Commerce required

importers and China-based exporters of solar panels and modules who claimed that their entries

did not contain solar cells from China to maintain certifications to that effect.  *See id.*

From July to October 2019, Greentech imported solar panels and modules into the United

States.  Following inquiries with Greentech, Customs and Border Protection (CBP or Customs)

1

PUBLIC VERSION

determined that Greentech had failed to maintain the required certifications and issued a notice of action requiring Greentech to post cash deposits at the all-others rate in the countervailing duty order and the China-wide rate in the antidumping duty order.  CBP then liquidated the entries at the assessed duty rates.  Greentech filed protests with CBP, which remain pending. Invoking this Court's residual jurisdiction pursuant to 28 U.S.C. § 1581(i), Greentech now challenges the certification requirement as applied to its entries of solar modules and panels.

This Court lacks jurisdiction to entertain the claims in Greentech's amended complaint, all three of which challenge CBP's application of the certification requirement to Greentech's entries.  The protest procedure and judicial review pursuant to 28 U.S.C. § 1581(a) are not manifestly inadequate to resolve such claims.  To the extent Greentech challenges the certification requirement itself, moreover, Greentech's challenge is untimely.  More than two years have elapsed since the accrual of any cause of action challenging the 2012 certification requirement.  Finally, claim three—alleging imposition of an excessive fine pursuant to the Eighth Amendment of the U.S. Constitution—should be dismissed on the additional basis of failure to state a claim.  The excessive fines clause applies to only penalties, whereas the antidumping and countervailing duty scheme is remedial in nature.

<u>ISSUES</u>

1.    Whether Greentech's complaint must be dismissed for lack of jurisdiction because all three of Greentech's claims challenge CBP's application of the certification requirement to Greentech's entries, and judicial review pursuant to 28 U.S.C. § 1581(a) is not manifestly inadequate to adjudicate such claims.

2.    Whether Greentech has failed to exhaust administrative remedies with respect to its challenges to CBP's application of the certification requirement to Greentech's entries.

3.     To the extent Greentech raises a standalone claim challenging Commerce's certification requirement imposed in 2012, whether Greentech's challenge is untimely pursuant to 28 U.S.C. § 2636(i).

4.     Whether Greentech's claim pursuant to the Excessive Fines Clause of the Eighth Amendment to the U.S. Constitution fails to state a claim upon which relief may be granted because the antidumping and countervailing duty laws are remedial in nature.

## BACKGROUND

I.     In 2012, Commerce Issues Antidumping And Countervailing Duty Orders On Solar Cells From China, Covering Solar Panels and Modules Assembled In Third Countries With Solar Cells From China

The dispute in this case relates to antidumping and countervailing duty investigations covering solar cells from China.  Both investigations covered "{m}odules, laminates, and panels produced in a third-country from cells produced in {China}."  *Final CVD Determ. Solar Cells from China*, 77 Fed. Reg. at 63,790; *Final AD Determ. Solar Cells from China*, 77 Fed. Reg. at 63,793 (collectively, Solar China investigations).  The resulting orders likewise cover solar panels and modules assembled in third countries from China-produced solar cells.  *See Canadian Solar, Inc. v. United States*, 918 F.3d 909, 914 (Fed. Cir. 2019) (citing *Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, From China*, 77 Fed. Reg. 73,018 (Dep't of Commerce Dec. 7, 2012) (antidumping duty order); *Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, From China,* 77 Fed. Reg. 73,017 (Dep't of Commerce Dec. 7, 2012) (countervailing duty order) (collectively, Solar China orders).

The scope of the orders reflects Commerce's determination regarding "country of origin" of the subject merchandise.  *See Final AD Determ. Solar Cells from China* IDM at Cmt. 1. "Commerce typically determines country of origin based on the country where the merchandise

is processed or manufactured." *Canadian Solar*, 918 F.3d at 913.  However, when imported

products "are made in one country, but finished or assembled in a different country," Commerce

typically uses the substantial transformation analysis to determine country of origin for the

imported article.  *Bell Supply Co., LLC v. United States*, 888 F.3d 1222, 1228 (Fed. Cir. 2018)

(citing *E.I. Du Pont de Nemours & Co. v. United States*, 8 F.Supp.2d 854, 859 (Ct. Int'l Trade

1998)).  In the Solar China investigations, Commerce "determined that the solar cell is the

origin-conferring component because the process of assembling the solar cells into panels does

not constitute a substantial transformation." *Canadian Solar*, 918 F.3d at 914 (citing *SunPower*

*Corp. v. United States*, 253 F. Supp. 3d 1275, 1279 & n.3 (Ct. Int'l Trade 2017)).  Thus,

Commerce concluded that the Solar China orders cover solar cells from China, including solar

panels assembled in third countries "using Chinese solar cells." *Id.* (citation omitted).

II.     **Commerce Requires Certifications From Importers And China-Based Exporters Who**
        **Claim Their Solar Panels And Modules Do Not Contain Solar Cells From China**

        In the final determinations, Commerce imposed a certification requirement on importers

and China-based exporters of solar panels and modules claiming that their merchandise does not

contain solar cells produced in China.  *See Final AD Determ. Solar Cells from China*, 77 Fed.

Reg. at 63,796-63,797.  Specifically, importers claiming that the solar panels and modules they

import do not contain Chinese solar cells "are required to maintain importer certifications and

documentation to that effect." *See, e.g.*, *Final AD Determ. Solar Cells from China* IDM Cmt. 1;

*Final CVD Determ. Solar Cells from China* IDM at Cmt. 32.  Additionally, "both the importer

and exporter are required to maintain exporter certifications if the exporter" of the relevant

merchandise "is located in" China.  *See, e.g.*, *Final CVD Determ. Solar Cells from China* IDM at

Cmt. 32.

Commerce provided additional details regarding compliance with the certification

requirements, including the specific language for the required importer certification:

> I hereby certify that I am an official of insert name of company
> importing solar panels/modules, that I have knowledge of the facts
> regarding the importation of the solar panels/modules or other
> products containing solar panels/modules that entered under entry
> number(s) insert entry number(s) covered by the certification, and
> that these solar panels/modules do not contain solar cells produced
> in the People's Republic of China. By signing this certificate, I
> also hereby certify that insert name of company importing solar
> panels/modules maintains sufficient documentation supporting this
> certification for all solar cells used to produce the solar
> panels/modules imported under the above-referenced entry
> number(s). I understand that agents of the importer, such as
> brokers, are not permitted to make this certification. Also, I am
> aware that records pertaining to this certification may be requested
> by CBP. I understand that this certification should be completed at
> the time of the entry. Also, I understand that failure to maintain the
> required certification or failure to substantiate the claim that the
> panels/modules do not contain solar cells produced in the People's
> Republic of China will result in suspension of all unliquidated
> entries for which these requirements were not met and the
> requirement that the importer post an AD cash deposit or, where
> applicable, a bond, on those entries equal to the PRC-wide rate in
> effect at the time of the entry and a CVD cash deposit, or where
> applicable, a bond rate equal to the all-others rate in effect at the
> time of the entry.

*Final AD Determ. Solar Cells from China*, 77 Fed. Reg. at 63,796-63,798.  Commerce also

provided the language required for the required exporter certification:

> I hereby certify that I am an official of insert name of company
> exporting solar panels/modules, that I have knowledge of the facts
> regarding the exportation of the solar panels/modules or other
> products containing solar panels/modules identified below, and
> that these solar panels/modules do not contain solar cells produced
> in the People's Republic of China. By signing this certificate, I
> also hereby certify that insert name of company exporting solar
> panels/modules maintains sufficient documentation supporting this
> certification for all solar cells used to produce the solar
> panels/modules identified below. I am aware that records
> pertaining to this certification may be subject to verification by
> Department of Commerce officials and I consent to verification
> with respect to this certification and these records. I understand

> that this certification should be completed at the time of shipment. I also understand that failure to maintain the required certification or failure to substantiate the claim that the panels/modules do not contain solar cells produced in the People's Republic of China will result in suspension of all unliquidated entries for which these requirements were not met and the requirement that the importer post an AD cash deposit or, where applicable, a bond, on those entries equal to the PRC-wide rate in effect at the time of the entry and a CVD cash deposit, or where applicable, a bond rate equal to the all-others rate in effect at the time of the entry.
>
> The exports covered by this certification are insert invoice numbers, purchase order numbers, export documentation, etc. to identify the exports covered by the certification.

*Id.* at 63,796-63,798.  Commerce further notified importers and China-based exporters of the consequences of failing to maintain the required certifications, explaining that it would instruct CBP to "suspend all unliquidated entries for which these requirements were not met and require the posting of a cash deposit or bond on those entries equal to the PRC-wide rate in effect at the time of the entry." *Final AD Determ. Solar Cells from China*, 77 Fed. Reg. at 63,797.

As Commerce further explained, the certification requirement was intended "to ensure that efforts to evade enforcement of any order imposed as a result of this investigation will be identified and thwarted." *Final AD Determ. Solar Cells from China* IDM at Cmt. 1.  "If an importer is declaring the wrong country-of-origin for imported merchandise, this is a matter appropriately dealt with by CBP{.}" *Final CVD Determ. Solar Cells from China* IDM at Cmt. 32.

Thus, Commerce issued instructions to CBP to implement the certification requirement.[1] Commerce's instructions provided that "CBP may accept" the required certifications "(and if

---

[1] *See* Commerce's instructions to CBP contained in Message 2153302, Plaintiff's Exhibit 2, ECF No. 11-2 at p. 23 (June 1, 2012) (instructions accompanying preliminary affirmative antidumping duty determination); *see also* Message 2158303 (June 6, 2012) (instructions establishing third country case numbers associated with the antidumping duty investigation, clarifying Message No. 2153302); Message 2163303 (June 11, 2012) (instructions

required by CBP, supporting documentation) to establish that the merchandise is not covered by

the scope of this investigation." *See, e.g.*, Message 2300302 (Oct. 26, 2012), Defendant's

Exhibit 4.  The messages also established third-country case numbers for merchandise assembled

in third countries and covered by the order.  For the antidumping duty investigation, Commerce

assigned Vietnam the third-country case number A-552-988.  *See* Message 2158303,

Defendant's Exhibit 2.  For the countervailing duty investigation, Commerce assigned Vietnam

the third-country case number C-552-989.  *See* Message 2163303, Defendant's Exhibit 3.

III.    In 2019, Greentech Imports Solar Panels And Modules Into The United States

From July to October 2019, importer of record Greentech made nineteen entries of solar

panels and modules into the United States.[2]  *See, e.g.*, Am. Compl. ¶ 23.  In the entry summaries

accompanying the merchandise, Greentech listed Vietnam as the Country of Origin.  *See, e.g.*,

*id.*; Entry Summaries, ECF No. 11-2, at 2-21.[3]  The "country of origin" for purposes of the entry

summary means "the country of manufacture, production, or growth of any article," or the

_____

establishing third country case numbers associated with the countervailing duty investigation,
clarifying Message No. 2087303, accompanying the preliminary affirmative antidumping duty
determination); Message 2300302 (Oct. 26, 2012) (instructions accompanying the final
antidumping duty determination); Message 2356306 (Dec. 21, 2012) (instructions accompanying
the final amended antidumping determination and antidumping duty order); Message 2346303
(Dec. 11, 2012) (instructions accompanying countervailing duty order), attached as Defendant's
Exhibits 2-6, respectively.  Commerce's antidumping and countervailing duty instructions to
Customs are available at https://aceservices.cbp.dhs.gov/adcvdweb/#messageDetails.

[2]  The facts discussed in this section and the following sections are based on the
allegations in Greentech's amended complaint and attachments.  *See* Am. Compl., ECF No. 11
(June 27, 2023).  Numerous factual allegations in Greentech's complaint are the subject of
ongoing and unadjudicated protests before CBP, which have been paused due to this litigation,
pursuant to 19 U.S.C. § 1515(c).  *See* Ortiz Decl. ¶ 11, attached as Defendant's Exhibit 1.

[3]  The pin citations to the attachments in Greentech's amended complaint reference the
pdf pages.  For example, this citation refers to pages 2-21 out of 86 pages in the pdf.

country in which the article "last underwent a substantial transformation." *See* CBP Form 7501[4]

(providing instructions relating to reporting the country of origin).

IV.   CBP Requests Additional Information

On June 10, 2021, CBP sent Greentech a request for information pursuant to 19 C.F.R.

§ 151.11.  *See* Am. Compl. ¶ 29; Request for Information, Exhibit 3, ECF No. 11-2, at 45-46.

CBP explained that it had [███████████████████████████████████████████

█████████████████████][5]  Request for Information, Exhibit 3, ECF No. 11-2,

at 46.  [██████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████].  *Id.*  CBP requested Greentech to [██████████████████

████████████████████████████████████]  *Id.*  CBP

further requested [██████████████████████████████████████████

███████████████████████████████].[6]  *Id.*

On July 20, 2021, [███████████████████████████████████

██████████████████████████████████████████].  Response

─────────────────────

[4]  Available at https://www.cbp.gov/sites/default/files/assets/documents/2022-
May/CBP%20Form%207501.pdf (attached as Defendant's Exhibit 7).

[5]  Plaintiff did not file redacted versions of Exhibits 1 and 2-7 attached to its amended
complaint and, despite outreach, has not confirmed that certain portions of the attachments are
public information.  Thus, this motion treats all material contained only in the confidential
attachments as confidential.  For consistency with plaintiff's bracketing, the Ortiz Declaration,
attached as Defendant's Exhibit 1, treats Greentech's protest numbers as confidential.

[6]  CBP also requested additional documentation, Am. Compl. at ¶¶ 26, 30, including
[███████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

██████████████████████████]  *see* Request for Information, ECF No. 11-2,
at 46.

to Request for Information, ECF No. 11-2, at 60.  The CBP import specialist responded that [ █████  ███████████████████████████████████████████████████████████████████████

█████████████████ ].  *See id.* at 59.  Greentech then provided [ ████████████████████████

██████████████████████████████████████████████████

███████████████████ ] Response to Request for Information, ECF No. 11-2, at 57; *see also* Am. Compl. ¶ 26.

In response, the CBP import specialist asked [ ██████████████████████████████

████████████████████████████████████████████████████████████████████ ].  Response to Request for Information, ECF No. 11-2, at 57.  The import specialist explained that

[ ████████████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████████

███████████████████████████████ ]  *Id.*  Greentech responded that it [ █████████

███████████████████████████████████████████████████████████████████████████

████████████████ ]  *Id.* at 56.

V.     CBP Issues A Form 29 Notice Of Action Requiring Cash Deposits For Antidumping And Countervailing Duties

On August 31, 2021, the CBP import official issued a notice of action suspending the liquidation of Greentech's nineteen entries of solar panels and modules and requiring payment of cash deposits at the China-wide rate for the applicable antidumping duty order and the all-others rate for the countervailing duty order.  Notice of Action, ECF No. 11-2, at 65.  The CBP official cited Commerce's instructions relating to the certification requirement, explaining that "{i}f an exporter . . . is located in the PRC, both the importer and the exporter must maintain . . . exporter certification certifying that the panels/modules do not contain solar cells produced in the PRC."

PUBLIC VERSION

*Id.* (quoting Commerce's instructions to CBP in Messages 2153302 and 2163303).  As the notice of action explained, [███████████████████████████████].  *Id.*

In the notice of action, CBP further explained that the importer certification "must be completed, signed, and dated at the time of the entry," [██████████████████████ ██████████████████].  Notice of Action, ECF No. 11-2, at 65.  The certification that Greentech provided to CBP "was dated after" CBP's inquiry.  *Id.*; Am. Compl. at ¶ 26.  Thus, CBP suspended liquidation and rate advanced the Greentech's entries.  Notice of Action, ECF No. 11-2 at 65; Am. Compl. at ¶ 34.  CBP notified Greentech that it could [████████ ██████████████████████████████████████]  Notice of Action, ECF No. 11-2 at 65.

VI.    <u>Greentech Provides Additional Information To CBP</u>

After receiving the notice of action, on November 12, 2021, Greentech [█████████ ████████████████████████████████████████ ███████████████].  *See* Greentech Ltr., ECF No. 11-3, at 18 – ECF No. 11-12, at 64 (Greentech letter to CBP including Exhibits A through V).

First, Greentech argued that [███████████████████████████ ██████████████████████████].  Greentech Ltr., ECF No. 11-3 at 22.  Greentech stated that [████████████████████████████████ ████████████████████████████]  Greentech Ltr., ECF No. 11-3 at 21.  Greentech asked CBP to find that [█████████████████████████ ████████████████████████████████████]  *Id.*

Greentech also contended that [███████████████████████████ ██████████████████████].  Greentech argued that [████████████████████]

███████████████████████████████████████████████ ].  Greentech Ltr.,

ECF No. 11-3 at 22.  Greentech contended that its [████████████████████████

████████████████████████████████████████████████████████████████

██████████ ] *Id.*[7]

       Greentech also presented additional information regarding [██████████████

██████████████████████ ].  According to Greentech, its entries were [█████████

███████████████████████ ]. *See, e.g.*, Greentech Ltr., ECF No. 11-3, at

22. [████████████████████████████████████████████ ]. *See* Ex. C,

ECF No. 11-3, at 45.  Greentech further stated that [██████████████████████████

██████████████████████████ ].  Greentech Ltr., ECF No. 11-3 at 21.

[██████████████████████████████████ ].  Ex. C, ECF

No. 11-3, at 48.  Greentech explained that [█████████████████████████████

████████████████████████████████████████ ]. *See* Greentech Ltr.,

ECF No. 22; *see also* Ex. B, ECF No. 11-3, at 38-39 (including [███████████████

██████████████ ]).  According to Greentech, [█████████████████████

███████████████████████████████████████████ ]  Greentech Ltr.,

ECF No. 11-3 at 21-22.

VII.   After Liquidation, Greentech Protests The Application Of Antidumping And
       Countervailing Duties

       CBP liquidated Greentech's entries with antidumping and countervailing duties at the

cash deposit rate.  *See* Message 0062401 (Mar. 2, 2020), attached as Defendant's Exhibit 8

(automatic liquidation instructions for the period 12/1/2018 through 11/30/2019).  On December

---

       [7] Elsewhere, Greentech states that that [██████████████████████████ ]  Mem. in
Support of Protest, ECF No. 11-13, at 12-13.

6, 2021, Greentech filed protest number [⬛⬛⬛⬛⬛] with CBP, challenging the assessment of antidumping and countervailing duties on the subject merchandise in entry number [⬛⬛⬛⬛⬛].  *See, e.g.*, Protest Mem., ECF No. 11-3, at 7; Am. Compl. ¶ 36; Ortiz Decl., Att. A, attached as Defendant's Exhibit 1.[8]  The protest incorporated by reference the legal arguments and factual information contained in Greentech's prior letter to CBP.  *See* Protest, ECF 11-3 at 7 (protest incorporating by reference the legal arguments and factual information the November 12, 2021 letter, reproduced in Attachment II).

Greentech's protest also enclosed "importer and exporter certifications," in which



Protest Mem., ECF No. 11-3, at 8.  Greentech requested "{f}urther review" from CBP pursuant to 19 C.F.R. § 174.24(b), arguing that [⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛] *Id.* at 8; *see also* Ortiz Decl. ¶ 4, Defendant's Exhibit 1.

On March 14, 2022, Greentech filed eighteen additional protests with CBP, challenging the assessment of antidumping and countervailing duties on the subject merchandise in eighteen other entries. *See* Protests, ECF No. 11-12, at 65 – ECF No. 11-16, at 62; Ortiz Decl. at ¶ 3 & Attach. A, Defendant's Exhibit 1.  On June 5, 2023, CBP requested additional information from

---

[8]  We rely on Ms. Ortiz's declaration only with respect to the jurisdictional argument that other sources of jurisdiction are not manifestly inadequate to address Greentech's claims.  The remaining arguments seek dismissal for failure to state a claim, and thus rely on the well-pleaded allegations in the complaint, including attachments and materials incorporated by reference, as well as matters subject to judicial notice.

Greentech relevant to CBP's evaluation of the nineteen protests filed by Greentech.  Ortiz Decl.

at ¶¶8-9.

VIII.    Days After CBP Requests Additional Information In The Pending Protests, Greentech
         Files This Case Seeking Re-Liquidation Of Its Entries With Refunds Of Its Antidumping
         And Countervailing Duties

On June 9, 2023, four days after receiving CBP's request for additional information,

Greentech filed a complaint pursuant to 28 U.S.C. § 1581(i), asking this Court to hold "unlawful

Commerce's certification provision and instructions as applied to Greentech's imports of solar

modules from Vietnam."  Compl. at 13, ECF No. 4 (June 9, 2023).

On June 27, 2023, Greentech filed an amended complaint attaching confidential exhibits,

including documentation relating to its nineteen ongoing protests with CBP.  Am. Compl., ECF

No. 11 (June 27, 2023).  Greentech's amended complaint asserts the same three claims as the

original complaint.  *Id.* at ¶¶ 37-44.  Claim one alleges that Commerce's certification

requirement is unlawful as applied to Greentech's entries because "Greentech submitted

documentation to CBP showing that the solar modules in question were not subject to the

AD/CVD orders on China."  *Id.* at ¶¶ 37-39.  Claim two alleges that the United States unlawfully

imposed antidumping and countervailing duties on Greentech's entries "when Greentech

submitted ample documentation showing the imports were not subject to the China AD/CVD

orders."  *Id.* at ¶¶ 40-41 (capitalization altered).  Finally, claim three alleges that imposing

antidumping and countervailing duties on its entries is excessive and violates the Eighth

Amendment of the United States Constitution.  *Id.* ¶¶ 42-44.  As relief, Greentech seeks

reliquidation of its entries and entry of judgment requiring the United States "to refund any AD

or CVD deposits" and "to liquidate" the relevant entries "without regard to AD or CVD duties."

*Id.* at p. 13.

Greentech's protests remain pending before CBP.  Ortiz Decl. at ¶¶ 7-8, 11.  Greentech

has not yet provided complete responses to the information requested by CBP on June 5, 2023.

Ortiz Decl. ¶ 10.  Since learning of Greentech's case filed in this Court, CBP has stayed further

action on Greentech's protests.[9]  Ortiz Decl. ¶ 11.

SUMMARY OF THE ARGUMENT

Greentech's amended complaint should be dismissed for lack of jurisdiction because

Greentech may not invoke this Court's residual jurisdiction pursuant to 28 U.S.C. § 1581(i) to

adjudicate pending but unadjudicated protest claims.  All three claims in Greentech's amended

complaint challenge CBP's application of the certification requirement to Greentech's entries.

The protest process, including judicial review pursuant to 28 U.S.C. § 1581(a), is not manifestly

inadequate to resolve such claims.  Greentech has nineteen protests on the same topic currently

pending before CBP, including pending and unresolved requests for additional information from

Greentech.  Judicial review of such claims may not occur until Greentech exhausts its

administrative remedies, including by awaiting a decision by CBP on the pending protests, and,

if CBP denies the protests, by paying duties as required by 28 U.S.C. § 2637(a).

To the extent Greentech's complaint could be construed as raising a standalone challenge

to the certification requirement imposed by Commerce (rather than CBP's application of that

requirement), such a claim must be dismissed as untimely pursuant to the two-year statute of

limitations in 28 U.S.C. § 2636(i).  More than two years have elapsed since the accrual of any

---

[9]  "{A}n action … commenced in the Court of International Trade that arises out of a protest or an application for further review," requires CBP to terminate all administrative action pertaining to such protest or application.  19 U.S.C. § 1515(c).  Although this action arguably does not "arise out of" the pending protests and application for further review because CBP has not yet made a decision on those protests and application, in an abundance of caution, CBP has ceased all further administrative action with regard to the pending protests and application for further review in light of this action.

14

PUBLIC VERSION

claim challenging the 2012 certification requirement.  Such a claim is untimely even assuming that it did not accrue until Greentech entered the relevant merchandise from July to October 2019—at which time Greentech was obligated to maintain the required certifications for the relevant merchandise.  Greentech did not file this case until June 2023, more than two years after the dates of entry.

Finally, claim three incorporates the allegations in the other two claims, and thus should be dismissed for lack of jurisdiction or as untimely, for the reasons discussed above.  In the alternative, claim three should be dismissed for failure to state a claim because the Excessive Fines clause in the Eighth Amendment has no application to remedial measures like the antidumping and countervailing duty scheme.

ARGUMENT

I.    <u>Standard Of Review</u>

A plaintiff bears the burden of establishing subject matter jurisdiction.  *Norsk Hydro Can., Inc. v. United States*, 472 F.3d 1347, 1355 (Fed. Cir. 2006).  In deciding a motion to dismiss for lack of jurisdiction filed pursuant to Rule 12(b)(1) of this Court's rules, the Court accepts as true all uncontroverted factual allegations in the complaint.  *Engage Learning, Inc. v. Salazar*, 660 F.3d 1346, 1355 (Fed. Cir. 2011).  "If the Rule 12(b)(1) motion denies or controverts the pleader's allegations of jurisdiction, however, the movant is deemed to be challenging the factual basis for the court's subject matter jurisdiction," and "the allegations in the complaint are not controlling."  *Cedars-Sinai Med. Ctr. v. Watkins*, 11 F.3d 1573, 1583 (Fed. Cir. 1993).  "{W}hen a federal court concludes that it lacks subject-matter jurisdiction, the court must dismiss the complaint in its entirety."  *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006).

15

A complaint that "fail{s} to state a claim upon which relief can be granted" shall be dismissed. *See* R. Ct. Int'l Trade 12(b)(6); *see also* R. Ct. Int'l Trade 8. To survive a motion to dismiss for failure to state a claim, filed under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

II.     Section 1581(a) Is Not Manifestly Inadequate To Adjudicate Challenges To CBP's Application Of The Certification Requirement To Greentech's Entries

This Court does not possess residual jurisdiction pursuant to 28 U.S.C. § 1581(i) to entertain Greentech's challenge to CBP's application of the certification requirement to Greentech's entries. As discussed below, this Court's residual jurisdiction is limited and may be invoked only when another avenue of judicial review is not available or is manifestly inadequate. Greentech has not demonstrated that the protest process, including potential judicial review pursuant to 28 U.S.C. § 1581(a), is manifestly inadequate to adjudicate its challenges to CBP's application of the certification requirement.

        A.      Greentech May Not Invoke Section 1581(i) Jurisdiction For Determinations Reviewable Under Other Sections Of Section 1581, Unless Greentech Demonstrates That Such Review Is Manifestly Inadequate

Federal courts "are courts of limited jurisdiction marked out by Congress." *Int'l Custom Prod., Inc. v. United States*, 467 F.3d 1324, 1326–27 (Fed. Cir. 2006) (citing, *e.g.*, *Norcal / Crosetti Foods, Inc. v. United States,* 963 F.2d 356, 358 (Fed.Cir.1992)). This Court's jurisdiction is established by 28 U.S.C. § 1581. "In subsection 1581(a), Congress set an express scheme for administrative and judicial review of Customs' actions." *Id.* "The system provides

for a protest before Customs, and review of protest denials in the Court of International Trade." *Id.* (citing 19 U.S.C. §§ 1514, 1515; 28 U.S.C. § 1581(a)). Further, under 28 U.S.C. § 1581(c), "the procedural correctness . . . as well as the merits" of antidumping or countervailing duty determinations "are subject to judicial review." *See Miller & Co. v. United States*, 824 F.2d 961, 964 (Fed. Cir. 1987) (citing 19 U.S.C. § 1516a) (involving a countervailing duty proceeding).

Section 1581(i) provides "a 'residual' grant of jurisdiction, and may not be invoked when jurisdiction under another subsection of § 1581 is or could have been available, unless the remedy provided under that other subsection would be manifestly inadequate." *Sunpreme Inc. v. United States*, 892 F.3d 1186, 1191 (Fed. Cir. 2018) (quoting *Fujitsu Gen. Am., Inc. v. United States*, 283 F.3d 1364, 1371 (Fed. Cir. 2002)). "{W}here a litigant has access to the Court of International Trade under traditional means, such as 28 U.S.C. § 1581(a), it must avail itself of this avenue of approach by complying with all the relevant prerequisites thereto." *Hartford Fire Ins. Co. v. United States*, 544 F.3d 1289, 1292 (Fed. Cir. 2008). Prerequisites for filing an action pursuant to 28 U.S.C. § 1581(a) include payment of "all liquidated duties, charges, or exactions" prior to filing suit. *See* 28 U.S.C. § 2637(a).

In considering whether a plaintiff has adequately invoked this Court's residual jurisdiction, courts "look to 'the true nature of the action.'" *Juancheng Kangtai Chemical Co., Ltd. v. United States*, 932 F.3d 1321, 1326 (Fed. Cir. 2019) (quoting *Norsk Hydro Can.*, 472 F.3d at 1355). "It is well settled that '{a} party may not expand a court's jurisdiction by creative pleading.'" *Env't One Corp. v. United States*, 627 F. Supp. 3d 1349, 1354 (Ct. Int'l Trade 2023) (quoting, *Sunpreme*, 892 F.3d at 1193; *Norsk Hydro Can.*, 472 F.3d at 1355). Consideration of the "true nature" of the action is necessary "{t}o prevent usurpation of the protest scheme

Congress has crafted." *Hartford Fire Ins. Co*., 544 F.3d at 1293 (citing *Norsk Hydro Can.*, 472 F.3d at 1355).

B.   By Challenging The Certification Requirement "As Applied," All Three Claims In Greentech's Amended Complaint Challenge CBP's Application Of Commerce's Certification Requirement To Greentech's Entries

Greentech "challenges the lawfulness of Commerce's certification requirement as applied to Greentech." Am. Compl. at ¶ 36.  The true nature of Greentech's claims thus challenge CBP's application of the certification requirement to Greentech's merchandise.  Such claims must be brought, if at all, pursuant to 28 U.S.C. § 1581(a).  Only if CBP denies Greentech's pending protests and Greentech pays the duties as required by 28 U.S.C. § 2637(a), may Greentech bring such a challenge to CBP's decisions.  *See* 28 U.S.C. §§ 1581(a), 2637(a); 19 U.S.C. §§ 1514(a), 1515.

The true nature of Greentech's "as applied" claims challenge CBP's application of the certification requirement to Greentech's entries.  It is CBP's role to apply and to enforce antidumping and countervailing duty orders and related instructions issued by Commerce. "Once Commerce issues an antidumping or countervailing duty order, {CBP} applies and enforces the duty orders through the assessment and collection of antidumping and countervailing duties on imports of the investigated merchandise." *Sunpreme*, 892 F.3d at 1188 (citing 19 C.F.R. §§ 159.41, 159.47, 351.211).  "CBP's role is to liquidate the goods pursuant to Commerce's instructions." *Aireko Constr., LLC v. United States*, 547 F. Supp. 3d 1350, 1355–56 (Ct. Int'l Trade 2020) (citing *Belgium v. United States*, 551 F.3d 1339, 1343 (Fed. Cir. 2009)). "{S}ubsection 1514(b) provides CBP the authority to determine 'whether goods fall within the scope of {an AD/CVD} order,' which determination is then 'final and conclusive' unless an interested party seeks a scope ruling from Commerce{.}" *TR Int'l Trading Co. v. United States*,

433 F. Supp. 3d 1329, 1341 (Ct. Int'l Trade 2020), *aff'd*, 4 F.4th 1363 (Fed. Cir. 2021) (quoting *Sunpreme III*, 946 F.3d at 1318 (quoting 19 U.S.C. § 1514(b)).

Greentech's "as applied" challenge disputes CBP's adherence to Commerce's instructions. All three claims in Greentech's amended complaint raise the same arguments that are currently pending in the nineteen protests before CBP. In the pending protests, Greentech argues that [███████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████] Protest Mem., ECF No. 11-3, at 7; *see also generally* Lead Protest, ECF Nos. 11-3 to 11-12. Greentech makes the same arguments in its amended complaint before this Court. Claim one alleges that Greentech's documentation "show{s} that the solar modules in question were not subject to the AD/CVD orders on China." Am. Compl. at ¶ 39. Claim two, likewise, alleges that the documentation that Greentech provided to CBP is "probative of the country of production and origin." *Id.* at ¶ 41. The same allegations are incorporated in claim three. *Id.* ¶ 42. According to Greentech's amended complaint, "not one module contained a solar cell produced in {China}." *Id.* ¶ 27.

Yet, rather than waiting for a decision by CBP and seeking judicial review pursuant to 1581(a) after exhausting administrative remedies, Greentech has asked this Court to prematurely adjudicate the same issues pursuant to its residual jurisdiction. *Compare* Am. Compl. at ¶¶ 38-44, and p. 13; *with* ECF Nos. 11-3 – 11-16 (containing hundreds of pages of submission to CBP relating to Greentech's protests).

Additional allegations in Greentech's amended complaint confirm that its claims challenge CBP's application of Commerce's instructions. Greentech traces its injury to the actions of CBP, alleging that its claim accrued when CBP issued the notice of action. *See* Am.

Compl. at ¶ 21.  Alternatively, Greentech traces its injury from "June 10, 2021," when "CBP

asked Greentech to submit information . . . relating to the imports from Vietnam"—another

action by CBP.  Am. Compl. at ¶ 21.

      Greentech also disputes findings in CBP's notice of action.  *See, e.g.*, Am. Compl. ¶¶ 25-

27.  For example, in the notice of action, CBP applied the [██████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

████████████ ] Notice of Action, ECF No. 11-2, at 65.  Greentech challenged this finding

in its pending protests, arguing that [█████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████ ] Greentech Ltr., ECF No. 11-3, at 22 (citation omitted) (also arguing that [████████

███████████████████████████████████████████ ]).  Although CBP has not

yet adjudicated this argument in Greentech's pending protests, Greentech makes the same

argument in its amended complaint, arguing that "{a}ll of Greentech's entries in 2019 of the

solar modules in question were produced in Vietnam *and exported* from Vietnam."  Am. Compl.

at ¶ 27 (emphasis added).  "Under those facts," Greentech claims that it "should not have had to

execute certifications based on Commerce's final results pertaining to an AD order on China."

*Id.* at ¶ 28.

      Finally, Greentech also challenges CBP's "failure to accept other documentation proving

country of production and origin{.}"  *See, e.g.*, Am. Compl. at ¶ 36.  This is a confusing claim,

given that CBP requested additional documentation from Greentech, and Greentech still has not

provided a complete response.  *See* Ortiz Decl. ¶ 10.  In any event, like the claims and allegations

discussed above, this allegation challenges CBP's application of Commerce instructions.  Thus,

PUBLIC VERSION

this argument must be challenged, if at all, through the protest process, not under this Court's residual jurisdiction.

In sum, rather than attempting to raise a standalone challenge to Commerce's imposition of the certification requirement, all three of Greentech's claims challenge CBP's application of the certification requirement to the nineteen entries at issue in this case.

C.     Judicial Review Pursuant To Section 1581(a) Is Not Manifestly Inadequate To Adjudicate Greentech's Challenges To CBP's Application Of The Certification Requirement

The protest process is not manifestly inadequate to adjudicate Greentech's challenges to CBP's application of the certification requirement.  "Liquidation is the 'final computation or ascertainment of the duties or drawback accruing on an entry.'"  *Juice Farms, Inc. v. United States*, 68 F.3d 1344, 1345–46 (Fed. Cir. 1995) (citing 19 C.F.R. § 159.1 (1995)).  Section 1514 "contemplates that both the legality and correctness of a liquidation be determined, at least initially, via the protest procedure."  *Id.* (quoting *United States v. A.N. Deringer, Inc*., 593 F.2d 1015, 1020 (C.C.P.A. 1979).  "Under {19 U.S.C.} § 1514, liquidation 'shall be final and conclusive upon all persons . . . unless a protest is filed,'" and protests generally must be "filed within 180 days after the date of liquidation."  *Carbon Activated Corp. v. United States*, 791 F.3d 1312, 1315 (Fed. Cir. 2015) (citing 19 U.S.C. § 1514(a), (c)(3)(A)).  "If Customs denies the protest, the importer may seek review in the Trade Court," *id.* (citing 19 U.S.C. § 1515; 28 U.S.C. § 1581(a)), so long as all "liquidated duties, charges, or exactions have been paid at the time the action is commenced," 28 U.S.C. § 2637(a).  If all such prerequisites to suit are satisfied, this Court possesses "exclusive jurisdiction of any civil action commenced to contest the denial of a protest."  *Carbon Activated*, 791 F.3d at 1315 (citing 28 U.S.C. § 1581(a)).

21

Greentech has not demonstrated that review of its claims pursuant to 28 U.S.C. § 1581(a) is manifestly inadequate.  "A remedy is manifestly inadequate if it is 'an exercise in futility,' meaning it is 'incapable of producing any result.'"  *Juancheng Kangtai*, 932 F.3d at 1327. Greentech has made no allegation that the protest process is manifestly inadequate to review the arguments that Greentech has raised to CBP.  To the contrary, the nineteen protests that Greentech has filed thus far demonstrate that the protest process is available to Greentech.  *See, e.g.*, Protest Mem., ECF No. 11-3, at 7-9; Greentech Ltr., ECF No. 11-3, at 18-31.  "Plaintiff offers no persuasive rationale as to why a protest proceeding is unavailable—indeed, it cannot, given its lodging of {multiple} Customs protests."  *TR Int'l Trading Co.*, 433 F. Supp. 3d at 1342 (citation omitted).

Nor does Greentech's apparent disagreement with Commerce's certification requirement render the protest process manifestly inadequate to resolve Greentech's claims.  Congress has established separate statutory roles for CBP and Commerce in administering and enforcing the antidumping and countervailing duty scheme.  *See Sunpreme Inc. v. United States*, 892 F.3d 1186, 1188 (Fed. Cir. 2018) (citing 19 U.S.C. §§ 1673, 1671(a)(1)) (contrasting Commerce's role in antidumping and countervailing duty proceedings with CBP's role in applying and enforcing the resulting orders).  These separate roles also implicate separate methods for challenging CBP's and Commerce's respective decisions, with 1581(a) available for protesting relevant decisions by CBP.  *See id.* at 1191 (discussing the usual methods of review pursuant to 1581(a) for CBP decisions and 1581(c) for decisions by Commerce); *see also* 19 U.S.C. § 1514(a) (listing CBP decisions that may be challenged in a protest); 19 U.S.C. § 1516a (listing matters reviewable pursuant to section 1516a).

PUBLIC VERSION

Courts have long implemented these differing avenues for review.  In one case, for example, this Court explained that a plaintiff "may protest CBP's failure to follow Commerce's instructions, but it may not protest the content of the instructions" pursuant to 28 U.S.C. § 1581(a).  *Aireko Constr., LLC. v. United States*, 547 F. Supp. 3d 1350, 1356 (Ct. Int'l Trade 2021) (citing 19 U.S.C. § 1514(a)(2); *Shinyei Corp. of Am. v. United States*, 355 F.3d 1297, 1304 (Fed. Cir. 2004)).  In another case, the Court recognized that if the alleged "error was in Customs' liquidation of the subject entries despite correct instructions," the plaintiff's "appropriate avenue for relief would be under" the protest procedure in "19 U.S.C. § 1514." *Carbon Activated Corp.*, 791 F.3d at 1317 (citing *Shinyei*, 355 F.3d at 1302 n.2).  Thus, regardless of any disagreement with Commerce's instructions, CBP's "adherence" to Commerce's instructions may be challenged through only the protest process.  *See Aireko*, 547 F. Supp. 3d at 1355–56.

Accordingly, because all three claims in Greentech's amended complaint allege "as applied" challenges to CBP's decisionmaking, *see* Section II.B, the case must be dismissed for lack of jurisdiction.

III.   Greentech Has Failed To Exhaust Protest Procedures

As an additional basis for dismissal, Greentech's "as applied" allegation must also be dismissed pursuant to Rule 12(b)(6) for failure to exhaust administrative remedies in the ongoing protests.  "{T}he Court of International Trade shall, where appropriate, require the exhaustion of administrative remedies."  28 U.S.C. § 2637(d).  By statute, "{e}xhaustion of administrative remedies" also requires that "a civil action contesting the denial of a protest . . . may be commenced in the Court of International Trade only if all liquidated duties, charges, or exactions have been paid at the time the action is commenced."  *Id.* § 2637(a).

23

"A plaintiff must exhaust administrative remedies as a matter of substantive law." *Belgium v. United States*, 551 F.3d 1339, 1347 (Fed. Cir. 2009). Exhaustion is not required when there is no administrative remedy to exhaust. *Consol. Bearings Co. v. United States*, 348 F.3d 997, 1003–04 (Fed. Cir. 2003) (stating that "the United States could not identify any administrative process available to challenge liquidation instructions issued by Commerce). In this case, however, protest procedures are available to challenge CBP's application of the certification requirement to Greentech's entries. Indeed, Greentech's country-of-origin and exporter-certification arguments are currently pending in the ongoing CBP protests. *See, e.g.*, Greentech Ltr., ECF No. 11-3 at 18-31. These protests have not yet been decided, and Greentech has not paid the associated duties required by CBP. Ortiz Decl. ¶¶ 11-12. Accordingly, Greentech has failed to exhaust administrative remedies with respect to these allegations.

IV.   Any Challenge To The Certification Requirement Imposed In 2012 Is Untimely

To the extent Greentech raises a standalone challenge to Commerce's imposition of the certification requirement—rather than CBP's application of that requirement to Greentech's merchandise—Greentech's amended complaint should be dismissed because its challenge is untimely.[10] "Actions brought pursuant to § 1581(i) must be brought 'within two years after the cause of action first accrues.'" *C.B. Imports Transamerica Corp. v. United States*, 35 C.I.T. 1750, 1753, 807 F. Supp. 2d 1350 (2011) (citing 28 U.S.C. § 2636(i)). Although the two-year

---

[10]   At this time, we do not dispute that Greentech could invoke section 1581(i) residual jurisdiction to challenge Commerce's certification requirement imposed in the final determinations, to the extent that Greentech was not—*and could not have been*—an interested party to the investigations in which Commerce issued that requirement. *See Miller & Co.*, 824 F.2d at 964 (discussing residual jurisdiction pursuant to 28 U.S.C. § 1581(i) for a plaintiff that was not an interested party to the Commerce proceeding). However, Greentech has not pursued a standalone challenge to the certification requirement in the amended complaint, and as discussed in this section, such a claim would be untimely.

statute of limitations is "not jurisdictional," *Ford Motor Co. v. United States*, 811 F.3d 1371,

1373–74 (Fed. Cir. 2016), it remains a mandatory claim-processing rule that, if properly raised,

is "unalterable," *Manrique v. United States*, 581 U.S. 116, 121 (2017) (quoting *Eberhart v.*

*United States*, 546 U.S. 12, 15, (2005)) (discussing the impact of "a mandatory claim-processing

rule").  As discussed below, any cause of action challenging the certification requirement

accrued in 2012 when the requirement was imposed.  At the latest, any challenge to the

certification requirement accrued when Greentech entered the relevant merchandise subject to

the obligations of the requirement.  Because more than two years have elapsed since claim

accrual, any claim challenging the certification requirement must be dismissed.

      A.      Greentech's Claim Accrued When All Events Necessary To State The Claim
              Have Occurred

"As a general matter, the statute of limitations begins to run when the plaintiff has a

'complete and present cause of action.'"  *Reed v. Goertz*, 143 S. Ct. 955, 961 (2023) (citing *Bay*

*Area Laundry and Dry Cleaning Pension Trust Fund v. Ferbar Corp. of Cal*., 522 U.S. 192, 201

(1997)).  "A cause of action accrues when 'all events' necessary to state the claim, or fix the

alleged liability of the Government, have occurred."  *Mitsubishi Elecs. Am., Inc. v. United States*,

44 F.3d 973, 977 (Fed. Cir. 1994) (quoting *United States v. Commodities Export Co*., 972 F.2d

1266, 1270 (Fed. Cir. 1992)).  In other words, "a claim accrues when 'the aggrieved party

reasonably should have known about the existence of the claim.'"  *Id.* (quoting *St. Paul Fire &*

*Marine Ins. Co. v. United States*, 959 F.2d 960, 964 (Fed. Cir. 1992)).

As part of the accrual analysis, courts must determine the specific right alleged to have

been infringed.  *See Reed*, 143 S. Ct. at 961.  In a constitutional case, for example, the Supreme

Court has explained that the Court's accrual analysis "focuses first on the specific constitutional

right alleged to have been infringed."  *Id.* (citing *McDonough v. Smith*, 139 S. Ct. 2149, 2155

(2019)).  In this case, any cause of action challenging the certification requirement accrued when "all the events have occurred" that would entitle Greentech to institute an action challenging that requirement.  *See Holmes v. United States*, 657 F.3d 1303, 1317 (Fed. Cir. 2011).

> B.    Greentech's Cause Of Action Challenging Commerce's Certification Requirement Accrued In 2019, At The Latest

Applying this analysis, Greentech's case is untimely because its cause of action to challenge the certification requirement accrued in 2012, when Commerce issued the certification requirement—or, at the latest, in 2019, when Greentech imported the relevant entries.

Commerce issued the certification requirement in 2012 as part of its final determinations in the antidumping and countervailing duty investigations.  *See Final AD Determ. Solar Cells from China*, 77 Fed. Reg. 63,791, and accompanying IDM at Cmt. 1; *see also Final CVD Determ. Solar Cells from China*, 77 Fed. Reg. 63,788 & IDM at Cmt. 32.  Thus, any challenge to Commerce's authority to require importer and certain exporter certifications accrued in 2012, when the certification requirement was issued.  Greentech offers no basis for concluding that such a claim would not accrue when the certification requirement was issued in 2012.  More than ten years have elapsed since 2012, making such a claim untimely pursuant to 28 U.S.C. § 2636(i).

At the latest, Greentech's claim challenging the certification requirement accrued in 2019, when Greentech imported the relevant merchandise into the United States.  At that time, Greentech was subject to the obligation to maintain importer certifications certifying that its solar panels and modules did not contain solar cells from China.  *See Final AD Determ. Solar Cells from China*, 77 Fed. Reg. 63,791.  It was also subject to the additional obligation to maintain an exporter certification and related documentation if the exporter of its merchandise was located in China.  *Id*.  To the extent Greentech claims that the requirement to maintain such

certifications violates the Administrative Procedures Act standard, it was obligated to bring any 1581(i) case within two years of such an injury.  Thus, Greentech's claims accrued—at the latest—by 2019, when Greentech entered the relevant merchandise.  *See* Am. Compl. at ¶ 23. Yet Greentech did not file this case until June 2023, significantly beyond the two-year limit established by 28 U.S.C. § 2636(i)).

Greentech argues that its claim did not accrue until August 31, 2021, the date when "CBP informed Greentech for the first time that certain of Greentech's entries of solar modules imported from Vietnam were subject to AD and CVD duties applicable to Chinese solar cells." Am. Compl. at ¶ 20.  However, CBP performs merely "a ministerial function" in executing Commerce's instructions.  *Belgium v. United States*, 551 F.3d 1339, 1343 (Fed. Cir. 2009) (citing *Mitsubishi Elecs. Am., Inc. v. United States*, 44 F.3d 973, 977 (Fed. Cir. 1994)).  As discussed above, any injury associated with CBP's application of the certification requirement— and ultimate liquidation—must be raised (if at all) pursuant to 28 U.S.C. § 1581(a).  Notice from CBP regarding applicable duties is not required for accrual of any claim challenging Commerce's certification requirement, which applied at the time of importation, well before CBP questioned the origin of the entries and requested the required certifications.  Thus, any challenge to Commerce's certification requirement accrued no later than October 2019, and is untimely.

> C.    Greentech Knew Or Should Have Known About The Certification Requirement No Later Than 2019, When It Entered The Relevant Solar Panels And Modules

To the extent Greentech argues that it could not have known about the certification requirement before CBP's notice of action, it is incorrect.  As the importer of record, Greentech was obligated to use "reasonable care" to assess whether its imports were subject to any antidumping or countervailing duty orders.  *See* 19 U.S.C. § 1484(a)(1).  An importer of record

must use "reasonable care" in, among other things, providing information "as is necessary to enable the Customs Service to . . . (i) properly assess duties on the merchandise." *Id.*

Using reasonable care, an importer of solar panels such as Greentech (Am. Compl. ¶ 23), would familiarize itself with the final determinations of the antidumping and countervailing duty investigations of solar cells from China, because those investigations cover solar panels assembled *in any country* using solar cells from China. *See Final AD Determ. Solar Cells from China*, 77 Fed. Reg. 63,791; *Final CVD Determ. Solar Cells from China*, 77 Fed. Reg. 63,788. Only by reviewing those determinations could an importer engage in reasonable due diligence to ensure that it is discharging its obligations to report whether its entries are subject to any antidumping and countervailing duty orders. A brief review of the final antidumping duty determination would notify an importer of the certification requirement. *See Final AD Determ. Solar Cells from China*, 77 Fed. Reg. 63,796-63,798.

In addition to this public notice of the certification requirement—accessible to all importers—Greentech's [█████████████████████████████████], confirming that an importer in its position using reasonable care would be aware of the certification requirement. For example, Greentech's [█████████████████████████]. *See* Protest Mem., ECF No. 11-3 at 8; Protest Mem., ECF No. 11-13, at 62. [████████████████████ ████████████████████████████████████████████ ████████████████████████████]. *See* Ex. C, ECF No. 11-3, at 45 and 48. According to Greentech, [██████████████████████████████ ██████████████████]. Greentech Ltr., ECF No. 11-3, at 22. In light of the [████████████ ████████████████████], an importer using reasonable care would have ensured familiarity with the Solar China orders—including the certification requirement. Thus,

PUBLIC VERSION

Greentech either knew or should have known about the certification requirement through the exercise of reasonable care.

Indeed, Commerce provided ample notice of the certification requirement throughout the investigations.  In the preliminary determination for the antidumping duty investigation, for example, Commerce explained that it would impose a certification requirement to implement "the scope of *both the AD and CVD investigations* of solar cells," including "modules, laminates, and panels produced in a third-country from solar cells produced in {China}."[11]  In the final determinations, likewise, Commerce explained that it had "taken additional measures to ensure that the scope of any order imposed . . . will be enforced," including by requiring importers and China-based exporters to maintain certifications if they claim that their merchandise does not contain solar cells from China.  *Final AD Determ., Solar Cells from China*, and accompanying IDM Cmt. 1; *see also Final CVD Determ., Solar Cells from China*, and accompanying IDM Cmt. 32.

The Court may also take judicial notice of Commerce's instructions to CBP, which are publicly available.  *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (explaining that in resolving motions to dismiss pursuant to Rule 12(b)(6), courts may consider "matters of which a court may take judicial notice"); *see also Peer Bearing Co.-Changshan v. United States*, 35 C.I.T. 1429, 1431 (2011) (discussing the same).  Thus, the Court may take judicial notice that Commerce publicly notified CBP of the certification requirement.  *See, e.g.*, Message 2300302 (Defendant's Exhibit 4) (instructions for final antidumping duty determination

---

[11] *Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, From China: Preliminary Determination of Sales at Less Than Fair Value, Postponement of Final Determination and Affirmative Preliminary Determination of Critical Circumstances*, 77 Fed. Reg. 31309, 31311 (Dep't of Commerce, May 25, 2012), and accompanying PDM (emphasis added).

for solar cells from China); Message 2356306 (Defendant's Exhibit 5) (instructions for antidumping duty order for solar cells from China); CBP Message 2346303 (Defendant's Exhibit 6) (instructions for countervailing duty order for solar cells from China).

Nor can Greentech claim surprise that imports from Vietnam specifically were subject to this certification requirement.  Commerce provided "a list of third countries," including Vietnam, "for which {it} established case numbers for merchandise covered by the scope" of the Solar China antidumping duty investigation.  Message 2158303 (Defendant's Exhibit 2) (assigning Vietnam the third-party case number A-552-988).  Similarly, Commerce also provided "a list of third countries," including Vietnam, "and the corresponding case numbers for merchandise from those countries that is covered by {the} scope of {the countervailing duty} investigation."  Message 2163303 (Defendant's Exhibit 3) (capitalization altered) (assigning Vietnam the third-country case number C-552-989).  An importer of solar panels exercising reasonable care would stay apprised of these updates, including the certification requirement.  *See* 19 U.S.C. § 1484.

In sum, any cause of action challenging the certification requirement accrued no later than 2019, when Greentech entered the disputed merchandise.  Even drawing inferences in Greentech's favor on the basis of the allegations in the amended complaint, there is no basis for concluding that any cause of action challenging Commerce's certification requirement accrued at a later date.  Therefore, to the extent the claims in Greentech's amended complaint challenge Commerce's certification requirement, the claims are untimely and should be dismissed.

V.     Claim Three Fails To State A Claim Upon Which Relief May Be Granted Because The
       Excessive Fines Clause Does Not Apply To The Remedial Antidumping And
       Countervailing Duty Scheme

Finally, to the extent the Court does not dismiss claim three on jurisdictional or timeliness grounds, it should nonetheless dismiss claim three for failure to state a claim because

the Eighth Amendment Excessive Fines clause does not govern remedial schemes like antidumping and countervailing duty orders.  Claim three alleges that "{d}efendant seeks to impose a significant monetary penalty in the guise of AD and CVD duties," which "is a 'fine' and the amount is 'excessive.'"  Am. Compl. ¶ 44.  According to Greentech, "the penalty Defendant seeks to collect is excessive and, thus, violates the Eighth Amendment to the U.S. Constitution." *Id.* at ¶ 43.

The Eighth Amendment prohibits the imposition of "excessive fines."  U.S. Const. amend. VIII.  "The purpose of the Eighth Amendment . . . was to limit the government's power to punish." *Austin v. United States*, 509 U.S. 602, 609 (1993) (citation omitted).  "The Excessive Fines Clause limits the government's power to extract payments, whether in cash or in kind, as *punishment* for some offense." *Id.* at 609-610 (cleaned up) (emphasis in original).  Thus, the threshold question in determining whether the Excessive Fines clause applies is whether the challenged action is "punitive or purely remedial{.}" *Grashoff v. Adams*, 65 F.4th 910, 916 (7th Cir. 2023); *see also United States v. Viloski*, 814 F.3d 104, 108 (2d Cir. 2016) (explaining the clause applies only to "forfeitures that may be characterized, at least in part, as 'punitive'").  If the sanction is punitive, the second question is whether the punishment is "grossly disproportional to the gravity of the offense." *Grashoff*, 65 F.4th at 916 (quoting *United States v. Bajakajian*, 524 U.S. 321, 334 (1998)) (cleaned up).

"It is well established that antidumping and countervailing duty laws are remedial in nature." *Guangdong Wireking Housewares & Hardware Co., Ltd. v. United States*, 745 F.3d 1194, 1205 (Fed. Cir. 2014).  "Trade duties are intended to be 'solely remedial.'" *Id.* (quoting *Chaparral Steel Co. v. United States*, 901 F.2d 1097, 1103–04 (Fed. Cir. 1990)).  "{C}ountervailing duties are not, nor were they ever intended to be, penal in nature; they are

PUBLIC VERSION

remedial in nature inasmuch as they operate to offset the effect of subsidies afforded foreign merchandise." *Id.* (quoting S. Rep. No. 92–1221, at 8 (1972)).   Similarly, "{t}he antidumping laws 'are remedial not punitive,'" *KYD, Inc. v. United States*, 607 F.3d 760, 767–68 (Fed. Cir. 2010) (quoting *NTN Bearing Corp. v. United States*, 74 F.3d 1204, 1208 (Fed.Cir.1995)).   For example, in the case of antidumping duties determined using facts available with an adverse inference (AFA), the Federal Circuit has explained that "an antidumping rate based on AFA is designed "to provide respondents with an incentive to cooperate, not to impose punitive . . . margins." *Id.* (quoting *F.lli De Cecco Di Filippo Fara S. Martino S.p.A v. United States*, 216 F.3d 1027, 1032 (Fed. Cir. 2000)).

   Consistent with the purpose of the antidumping and countervailing duty laws, the Solar China determinations and related certification requirement are remedial in nature.   As contemplated by the statutory scheme, Commerce issued the Solar China orders only after receiving a petition alleging injury, determining the scope of the investigations, issuing preliminary and final determinations, and receiving an injury determination by the International Trade Commission.   *See* Solar China orders; *Crystalline Silicon Photovoltaic Cells & Modules from China*, USITC Inv. No. 701-TA-481 (U.S. Intern. Trade Comm'n Nov. 1, 2012).   The final orders cover solar panels and modules from third countries containing solar cells from China, and Commerce explained that the certification requirement was necessary to implement the scope of the order.   *See Final AD Determ. Solar Cells from China*, 77 Fed. Reg. 63,796-63,797, and accompanying IDM at Cmt. 1.   Specifically, Commerce imposed the certification requirement "to ensure that efforts to evade enforcement of any order imposed as a result of this investigation will be identified and thwarted." *Final AD Determ. Solar Cells from China* IDM at

PUBLIC VERSION

Cmt. 1 (explaining that Commerce had "taken additional measures to ensure that the scope of any order imposed as a result of the investigation will be enforced").

Commerce has consistently explained that "once the Commission finds that certain imports are causing injury to the domestic injury, Commerce must provide a remedy that addresses those imports." *Canadian Solar*, 918 F.3d at 918–19 (citing Remand Results, at 20–21, attached as Defendant's Exhibit 9). Commerce has significant discretion in how to "best effectuate the purpose of the antidumping {and countervailing duty} laws and the violation found." *See id.* (quoting, *e.g.*, *Mitsubishi Elec. Corp. v. United States*, 898 F.2d 1577, 1583 (Fed. Cir. 1990)) (describing Commerce's reasoning in crafting the scope of a later investigation into solar products from China).

In this case, Commerce imposed the certification requirement to provide an appropriate remedy to the unfair trade practices determined to exist in the Solar China investigations. *See Final AD Determ. Solar Cells from China*, 77 Fed. Reg. at 63,793, and IDM at Cmt. 1. As Commerce explained when codifying its practice regarding certifications, any "additional burdens" inherent in the obligation to maintain such certifications "are directly related to the proceeding itself in which Commerce adopted the certification and relevant requirements." *Regulations To Improve Administration and Enforcement of Antidumping and Countervailing Duty Laws*, 86 Fed. Reg. 52,300, 52,363 (Dep't of Commerce, Sept. 20, 2021).[12]

---

[12]   Commerce has codified its practice with respect to requiring certification by an importer or other interested party, at 19 C.F.R. 351.228. Although the regulation did not take effect until October 20, 2021, section 351.228 represents "a codification of existing practice." *Regulations To Improve Administration and Enforcement of Antidumping and Countervailing Duty Laws*, 86 Fed. Reg. 52,300, 52,302-52,363 (Dep't of Commerce, Sept. 20, 2021); *see also id.* at 52,363 n.191 (citing, *e.g.*, *Sugar from Mexico: Suspension of Countervailing Duty Investigation*, 79 Fed. Reg. 78,044 (Dep't of Commerce, Dec. 29, 2014) (in which Commerce required importers, exporters, and producers to certify certain requirements with respect to entries of subject merchandise subject to the agreement)); *see also Regulations to Improve*

Thus, consistent with the overall antidumping and countervailing duty scheme, the certification requirement is solely remedial in nature.  Accordingly, the Excessive Fines Clause does not apply, and claim three should be dismissed for failure to state a claim upon which relief may be granted.

<u>CONCLUSION</u>

For these reasons, we respectfully request that the Court dismiss Greentech's amended complaint.

---

*Administration and Enforcement of Antidumping and Countervailing Duty Laws*, 85 Fed. Reg. 49,472, 49,491 & n.103 (Dep't of Commerce, Aug. 13, 2020) (Proposed Rule) (citing *Notice of Amended Final Determination of Sales at Less Than Fair Value and Antidumping Duty Order: Low Enriched Uranium From France*, 67 Fed. Reg. 6,680 (Dep't of Commerce, Feb. 13, 2002) (requiring certifications from the importer and end user)).

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

OF COUNSEL:                          PATRICIA M. MCCARTHY
                                     Director
SPENCER NEFF
Attorney
U.S. Department of Commerce          /s/ Reginald T. Blades, Jr.
Office of Chief Counsel for Trade    REGINALD T. BLADES, JR.
Enforcement & Compliance             Assistant Director

ALEXANDRA KHREBTUKOVA                /s/ Emma E. Bond
Senior Attorney                      EMMA E. BOND
U.S. Customs and Border Protection   U.S. Department of Justice
Office of the Chief Counsel          Commercial Litigation Branch - Civil
International Trade Litigation        Division
                                     P.O. Box 480
                                     Ben Franklin Station
                                     Washington, DC 20044
                                     Tel: (202) 305-2034

September 7, 2023                    *Attorneys for Defendant*

## **CERTIFICATE OF COMPLIANCE**

Pursuant to Chambers Procedures 2(B)(1) and (2), I hereby certify that the attached

MOTION TO DISMISS contains 10,565 words, according to the word-count function of the

word processing system used to prepare this brief (Microsoft Office for Microsoft 365).

Dated: September 7, 2023                                    /s/ Emma E. Bond
                                                                          Emma E. Bond