**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

**BEFORE:  THE HONORABLE MARK A. BARNETT, CHIEF JUDGE**

| | |
|---|---|
| GREENTECH ENERGY SOLUTIONS, INC., | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) Court No. 23-00118 |
| UNITED STATES, | ) PUBLIC VERSION |
| Defendant. | ) ) ) |

<u>**DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS**</u>

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. MCCARTHY
Director

OF COUNSEL:

SPENCER NEFF
Attorney
U.S. Department of Commerce
Office of Chief Counsel for Trade
Enforcement & Compliance

ALEXANDRA KHREBTUKOVA
Senior Attorney
U.S. Customs and Border Protection
Office of the Chief Counsel
International Trade Litigation

November 16, 2023

REGINALD T. BLADES, JR.
Assistant Director

EMMA E. BOND
Trial Attorney
U.S. Department of Justice
Commercial Litigation Branch - Civil
Division
P.O. Box 480
Ben Franklin Station
Washington, DC 20044
Tel: (202) 305-2034

*Attorneys for Defendant United States*

## TABLE OF CONTENTS

**PAGE**

TABLE OF CONTENTS .................................................................................................. i

TABLE OF AUTHORITIES ........................................................................................... ii

INTRODUCTION ........................................................................................................... 1

DISCUSSION .................................................................................................................. 3

    I.      Greentech's Arguments On Jurisdiction Contradict Its Arguments Regarding Timeliness ................................................................................................................ 3

    II.     Greentech's Challenge To Commerce's Certification Requirement Is Untimely ... 5

        A.      Greentech's Arguments Regarding 28 U.S.C. § 1581(c) Are Unpersuasive. ..................................................................................................................... 5

        B.      All Events Necessary To State Any Standalone Claim Challenging Commerce's Certification Requirement Occurred No Later Than 2019 .... 6

        C.      Greentech's Standing Arguments Are Unpersuasive ................................ 8

        D.      Greentech's Remaining Arguments Confirm That Any Challenge To Commerce's Certification Requirement Is Untimely ............................. 11

    III.    Any Challenge To CBP's Application Of The Certification Requirement Lies Outside This Court's Residual Jurisdiction ........................................................ 13

    IV.    Greentech Has Failed To Exhaust Administrative Remedies Required For Judicial Review Of CBP Decisions ................................................................................... 15

    V.    The Certification Requirement Is Purely Remedial And Does Not Implicate The Excessive Fines Clause ...................................................................................... 16

CONCLUSION.............................................................................................................. 20

## <u>TABLE OF AUTHORITIES</u>

<u>CASES</u>                                                                         <u>PAGE(S)</u>

*Abbott Labs. v. Gardner*,
    387 U.S. 136 (1967) ...................................................................................6, 7, 8

*Aireko Constr., LLC. v. United States*,
    547 F. Supp. 3d 1350 (Ct. Int'l Trade 2021)......................................................4

*Austin v. United States*,
    509 U.S. 602 (1993) .........................................................................................20

*Bay Area Laundry and Dry Cleaning Pension Trust Fund v. Ferbar Corp. of Cal.*,
    522 U.S. 192 (1997) ...........................................................................................9

*Bennett v. Spear*,
    520 U.S. 154 (1997) ...........................................................................................3

*Canadian Solar, Inc. v. United States*,
    918 F.3d 909 (Fed. Cir. 2019)..........................................................................17

*Env't One Corp. v. United States*,
    627 F. Supp. 3d 1349 (Ct. Int'l Trade 2023)......................................................2

*Gabelli v. S.E.C.*,
    568 U.S. 442 (2013) ...........................................................................................9

*Guangdong Wireking Housewares & Hardware Co., Ltd. v. United States*,
    745 F.3d 1194 (Fed. Cir. 2014)........................................................................16

*Hartford Fire Ins. Co. v. United States*,
    544 F.3d 1289 (Fed. Cir. 2008)........................................................................15

*KYD, Inc. v. United States*,
    607 F.3d 760 (Fed. Cir. 2010)..........................................................................16

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992) ...........................................................................................6

*Merck & Co. v. Reynolds*,
    559 U.S. 633 (2010) .........................................................................................10

*Michael Simon Design, Inc. v. United States*,
    33 C.I.T. 1003 (2009) .........................................................................................3

*Miller & Co. v. United States*,
    824 F.2d 961 (Fed. Cir. 1987)........................................................................5

*Mitsubishi Elec. Corp. v. United States*,
    898 F.2d 1577 (Fed. Cir. 1990).....................................................................17

*Mitsubishi Elecs. Am., Inc. v. United States*,
    44 F.3d 973 (Fed. Cir. 1994).....................................................................6, 12

*Nat'l Org. of Veterans' Advocs., Inc. v. Sec'y of Veterans*,
    *Affs.*, 981 F.3d 1360 (Fed. Cir. 2020).........................................................6, 8

*Norton v. So. Utah Wilderness Alliance*,
    542 U.S. 55 (2004) ......................................................................................3

*NTN Bearing Corp. v. United States*,
    74 F.3d 1204 (Fed. Cir. 1995).......................................................................16

*Reed v. Goertz*,
    143 S. Ct. 955 (2023)...........................................................................9, 11, 12

*Shinyei Corp. of Am. v. United States*,
    355 F.3d 1297 (Fed. Cir. 2004)......................................................................4

*Stockwell v. United States*,
    13 Wall. 531, 20 L.Ed. 491 (1871)............................................................19, 20

*Sunpreme, Inc. v. United States*,
    892 F.3d 1186 (Fed. Cir. 2018)............................................................2, 3, 13, 14

*TR Int'l Trading Co. v. United States*,
    433 F. Supp. 3d 1329 (Ct. Int'l Trade 2020).....................................................14

*United States v. Bajakajian*,
    524 U.S. 321 (1997) .................................................................................19, 20

*United States v. Commodities Export Co.*,
    972 F.2d 1266 (Fed. Cir. 1992).......................................................................6

*Wanxiang Am. Corp. v. United States*,
    399 F. Supp. 3d 1323 (Ct. Int'l Trade 2019)....................................................3, 4

## **STATUTES**

5 U.S.C. § 702.............................................................................................. 2, 3

5 U.S.C. § 704.................................................................................................................3

5 U.S.C. § 706 ...............................................................................................................2

19 U.S.C. § 1484(a) ......................................................................................................18

19 U.S.C. § 1484(a)(1) .................................................................................................10

19 U.S.C. § 1484(a)(1)(B)(i)-(ii) ................................................................................11

19 U.S.C. § 1514.......................................................................................................4, 15

28 U.S.C. § 1581(a) ..................................................................................................2, 13

28 U.S.C. § 1581(c) .......................................................................................................5

28 U.S.C. § 1581(i) .........................................................................................1, 2, 3, 15

28 U.S.C. § 2631(i) ........................................................................................................2

28 U.S.C. § 2636...................................................................................................2, 9, 10

28 U.S.C. § 2637(a) ..................................................................................................2, 15

28 U.S.C. § 2640(e) .......................................................................................................2

## OTHER AUTHORITIES

*Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled into Modules, from China: Final Determination of Sales at Less Than Fair Value, and Affirmative Final Determination of Critical Circumstances, in Part,* (*Final AD Determ. Solar Cells from China*),
   77 Fed. Reg. 63,791 (Dep't of Commerce, Oct. 17, 2012).......................................passim

*Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, From China: Final Affirmative Countervailing Duty Determination and Final Affirmative Critical Circumstances Determination,* (*Final CVD Determ. Solar Cells from China*),
   77 Fed. Reg. 63,788 (Dep't of Commerce Oct. 17, 2012)..................................... 1, 4, 18

*Regulations To Improve Administration and Enforcement of Antidumping and Countervailing Duty Laws,*
   86 Fed. Reg. 52,300 (Dep't of Commerce, Sept. 20, 2021))...........................................17

## DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS

## INTRODUCTION

Our motion to dismiss demonstrates that the amended complaint filed by Greentech Energy Solutions, Inc. (Greentech) should be dismissed for lack of jurisdiction or as untimely filed.  Mot. to Dismiss (Mot.), ECF No. 15 (Sept. 7, 2023).  All three claims in the amended complaint challenge a certification requirement imposed in 2012 by the Department of Commerce (Commerce) and actions by U.S. Customs and Border Protection (CBP) in applying that requirement to Greentech's entries.  *See Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled into Modules, from the People's Republic of China (China): Final Determination of Sales at Less Than Fair Value, and Affirmative Final Determination of Critical Circumstances, in Part*, (*Final AD Determ. Solar Cells from China*), 77 Fed. Reg. 63,791 (Dep't of Commerce, Oct. 17, 2012), and accompanying Issues & Decision Mem. at Cmt. 1 (IDM) (imposing the certification requirement); *Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, From China: Final Affirmative Countervailing Duty Determination and Final Affirmative Critical Circumstances Determination*, (*Final CVD Determ. Solar Cells from China*), 77 Fed. Reg. 63,788 (Dep't of Commerce Oct. 17, 2012), and accompanying IDM at Cmt. 32 (same).  As demonstrated in our motion, Greentech's challenge to Commerce's certification requirement is untimely, and its challenges to CBP's notice of action and duty assessment upon liquidation lie outside of this Court's residual jurisdiction.  Mot. at 15-30; *see also* 28 U.S.C. § 1581(i).

In response, Greentech makes internally contradictory arguments in an attempt to overcome both its untimely filing and the limitations of this Court's residual jurisdiction.  On the one hand, Greentech argues that its claim is not untimely because (according to Greentech), it

PUBLIC VERSION

suffered no injury until CBP issued the notice of action—which culminated in CBP liquidating the relevant entries subject to antidumping and countervailing duties and Greentech filing nineteen protests, all of which remain pending.  On the other hand, Greentech attempts to dodge jurisdictional restrictions on judicial review of CBP protests by claiming that CBP's decisions were purely ministerial and, thus, not subject to administrative exhaustion requirements.

Greentech cannot have it both ways.  Greentech attempts to invoke the Court's residual jurisdiction by asserting a claim pursuant to the Administrative Procedure Act (APA).  *See* Am. Compl. at ¶ 16; *see also* 28 U.S.C. § 2631(i) (citing 5 U.S.C. § 702); 28 U.S.C. § 2640(e) (citing 5 U.S.C. § 706).  In any APA claim, Greentech must identify the specific final agency action that it is challenging.  If Greentech challenges Commerce's certification requirement, such a claim accrued no later than 2019, when Greentech imported merchandise subject to the certification requirement.  This would render Greentech's complaint filed in 2023 untimely.  28 U.S.C. § 2636(i).  Alternatively, if Greentech challenges actions by CBP in applying the certification requirement—culminating in the assessment of antidumping and countervailing duties on Greentech's entries—Greentech must exhaust protest procedures pursuant to 28 U.S.C. § 1581(a) and 28 U.S.C. § 2637(a) and (d).  Because such protest procedures are not manifestly inadequate, this Court does not possess residual jurisdiction to review such actions by CBP.

Greentech insists that this Court's residual jurisdiction is "tailor made" for its action. Greentech Resp. (Resp.) at 5, ECF No. 20 (Oct. 12, 2023) (citing 28 U.S.C. § 1581(i)).  In fact, Greentech's action is tailor *pleaded* in an unpersuasive attempt to fashion a claim that is both timely and qualifies for review pursuant to this Court's residual jurisdiction.  *See* 28 U.S.C. §§ 1581(i), 2636(i).  But it "is well settled that '{a} party may not expand a court's jurisdiction by creative pleading.'" *Env't One Corp. v. United States*, 627 F. Supp. 3d 1349, 1354 (Ct. Int'l

Trade 2023) (quoting, *e.g.*, *Sunpreme, Inc. v. United States*, 892 F.3d 1186, 1193 (Fed. Cir. 2018)).  Thus, Greentech's amended complaint must be dismissed.

Finally, claim three alleges that the United States imposed an unconstitutionally excessive fine.  Am. Compl. ¶ 44.  Even if not dismissed for lack of jurisdiction or as untimely, claim three should be dismissed for failure to state a claim because Greentech has failed to allege any punitive measure subject to the Excessive Fines Clause of the U.S. Constitution.

DISCUSSION

I.     Greentech's Arguments On Jurisdiction Contradict Its Arguments Regarding Timeliness

"To invoke the Court's subject matter jurisdiction under § 1581(i), a plaintiff must suffer a legal wrong because of agency action 'or {be} adversely affected or aggrieved by agency action within the meaning of a relevant statute.'"  *Michael Simon Design, Inc. v. United States*, 33 C.I.T. 1003, 1009–10 (2009), *aff'd*, 609 F.3d 1335 (Fed. Cir. 2010) (quoting, *e.g.*, *Norton v. So. Utah Wilderness Alliance*, 542 U.S. 55, 61 (2004); 5 U.S.C. § 702).  Further, when "the plaintiff's challenge is made under the general-review provisions of the {Administrative Procedure Act (APA)}, the agency action complained of must be 'final' to be subject to judicial review."  *Id.* (quoting *Norton*, 542 U.S. at 61–62; 5 U.S.C. § 704).  "Generally, for an agency action to be 'final,' two conditions must be satisfied: (1) 'the action must mark the consummation of the agency's decision-making process . . . ' and (2) 'the action must be one by which rights or obligations have been determined, or from which legal consequences will flow.'"  *Wanxiang Am. Corp. v. United States*, 399 F. Supp. 3d 1323, 1333 (Ct. Int'l Trade 2019), *aff'd*, 12 F.4th 1369 (Fed. Cir. 2021)) (quoting *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997) (other citations omitted) (cleaned up)).  To establish jurisdiction pursuant to 28 U.S.C. § 1581(i),

PUBLIC VERSION

moreover, the party invoking the Court's jurisdiction must establish that any other remedy that is or could have been available "would be manifestly inadequate."  *Sunpreme*, 892 F.3d at 1191.

In an attempt to satisfy these jurisdictional requirements, Greentech contends that its challenge is limited to Commerce's imposition of the certification requirement in 2012.  Resp. at 5-10; *see also, e.g.*, *Final AD Determ. Solar Cells from China*, 77 Fed. Reg. at 63,793. Greentech maintains that all subsequent actions—including CBP's imposition of duties and liquidation of Greentech's entries—are merely ministerial and flow naturally from the certification requirement itself.  Resp. at 1, 5-10.  According to Greentech, CBP "acted ministerially" in applying the certification requirement and ultimately imposing antidumping and countervailing duties on Greentech's merchandise—"not deviating an iota from Commerce's explicit instructions."  Resp. at 1.

When addressing claim accrual, however, Greentech shifts to a different agency action, claiming that its claim did not accrue until CBP issued the notice of action suspending liquidation of the entries and requiring payment of cash deposits at the requisite antidumping and countervailing duty rates.  Resp. at 10-14.

Greentech cannot have it both ways.  As demonstrated in our motion and not rebutted by Greentech, Congress has established separate avenues of review for actions by Commerce and CBP.  Mot. at 22-23 (citing, *e.g.*, *Shinyei Corp. of Am. v. United States*, 355 F.3d 1297, 1304 (Fed. Cir. 2004); *Aireko Constr., LLC. v. United States*, 547 F. Supp. 3d 1350, 1356 (Ct. Int'l Trade 2021); 19 U.S.C. § 1514(a)(2)).  APA review itself requires precision in assessing the specific action being challenged.  *See, e.g.*, *Wanxiang Am.*, 399 F. Supp. 3d at 1333 (assessing whether a claim is reviewable pursuant to the APA).  To the extent Greentech can establish residual jurisdiction to challenge Commerce's certification requirement, claim accrual must be

measured by assessing any injury resulting from that agency action issued in 2012. *Final AD Determ. Solar Cells from China*, 77 Fed. Reg. at 63,793; *Final CVD Determ. Solar Cells from China*), 77 Fed. Reg. 63,788, and IDM at Cmt. 32. For Greentech to assert injury from CBP's actions, in turn, Greentech must establish that this Court may exercise residual jurisdiction to review those actions by CBP. As discussed below, Greentech fails on both counts.

II.    Greentech's Challenge To Commerce's Certification Requirement Is Untimely

Our motion to dismiss demonstrates that any claim by Greentech challenging Commerce's certification requirement accrued when the requirement was issued in 2012, or, at the latest, in 2019, when Greentech imported the relevant entries. Mot. at 24-30. In response, Greentech contends that its claim against Commerce's certification requirement did not accrue until CBP took action to enforce the requirement—either by requesting the certificates in June 2021 or issuing the notice of action in July 2021. Resp. at 14-15. Greentech is incorrect.

A.    Greentech's Arguments Regarding 28 U.S.C. § 1581(c) Are Unpersuasive

As an initial matter, Greentech responds to an argument that we did not make, insisting that 28 U.S.C. § 1581(c) would have been manifestly inadequate to review its challenge to Commerce's certification requirement. *See, e.g.*, Resp. at 13. As explained in our motion, however, we do not currently dispute this point. Specifically, we do not contest that "Greentech could invoke section 1581(i) residual jurisdiction to challenge Commerce's certification requirement imposed in the final determinations, to the extent that Greentech was not—*and could not have been*—an interested party to the investigations in which Commerce issued that requirement." Mot. at 24 n. 10 (citing *Miller & Co. v. United States*, 824 F.2d 961, 964 (Fed. Cir. 1987)).

B.     All Events Necessary To State Any Standalone Claim Challenging Commerce's
       Certification Requirement Occurred No Later Than 2019

Any claim challenging Commerce's certification requirement pursuant to this Court's residual jurisdiction accrued in 2012, when the certification requirement was imposed—and, in any event, no later than 2019, when Greentech imported the relevant merchandise.  A claim accrues when "'all events' necessary to state the claim" have occurred.  Mot. at 24-25 (citing *Mitsubishi Elecs. Am., Inc. v. United States*, 44 F.3d 973, 977 (Fed. Cir. 1994) (quoting *United States v. Commodities Export Co.*, 972 F.2d 1266, 1270 (Fed. Cir. 1992)).  Greentech offers no alternative standard for assessing claim accrual.

To be sure, any cognizable claim must satisfy Article III requirements of standing—including an injury in fact—and the justiciability requirement of ripeness.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992); *Abbott Labs. v. Gardner*, 387 U.S. 136, 149 (1967), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977).  In this case, however, any cognizable injury occurred when Greentech imported relevant merchandise, regardless of any subsequent enforcement by CBP.

"{T}he Supreme Court has affirmed the standing of regulated entities to bring *pre-enforcement* challenges to agency action."  *Nat'l Org. of Veterans' Advocs., Inc. v. Sec'y of Veterans Affs.*, 981 F.3d 1360, 1370 (Fed. Cir. 2020) (citing *Abbott Labs.*, 387 U.S. at 153–54) (emphasis added).  In *Abbot Laboratories*, for example, the Supreme Court held that a pre-enforcement APA challenge was ripe for judicial review in light of the costs of complying with the challenged agency action and the risks associated with "{t}he alternative to compliance."  *Abbott Labs.*, 387 U.S. 136, 152–53.  In this case, similarly, Greentech was not required to await the purely ministerial enforcement by CBP before pursuing any challenge to Commerce's certification requirement.

Indeed, applying the analysis in *Abbott Laboratories*, any claim challenging Commerce's certification requirement would have accrued once Greentech imported merchandise subject to that requirement—as early as 2012. Greentech does not deny importing solar modules or panels in 2012 subject to the certification requirement. Instead, Greentech merely states that "{i}n 2011 and 2012, Greentech had not imported the solar cells from Vietnam *at issue in this dispute*," which were imported in 2019. Resp. at 12 (emphasis added). This circular statement does not deny that Greentech was affected by the certification requirement in 2012, when the certification requirement was imposed.

In any event, there is no need to resolve whether any challenge to the certification requirement accrued in 2012 because Greentech's claim is untimely even if it did not accrue until 2019. Between July and October, 2019, Greentech imported merchandise subject to the certification requirement. *See* Am. Compl. ¶ 23. As Greentech concedes, Commerce required importers of covered merchandise to maintain a "certificate executed at the *time of import* . . . , certifying that the solar cells were not produced in China." Resp. at 1 (emphasis added). Failure to maintain such a certificate at the time of import could result in CBP requiring the importer to post cash deposits on the merchandise at the China-wide rate for the applicable antidumping duty order and the all-others rate for the countervailing duty order. *See, e.g.*, *Final AD Determ. Solar Cells from China*, 77 Fed. Reg. at 63,797. Thus, no later than July 2019, Greentech was put to the choice to either maintain the requisite certifications or risk imposition of antidumping and countervailing duties. Nothing more is required for the accrual of any APA claim challenging Commerce's certification requirement. *See Abbott Labs.*, 387 U.S. at 149.

C.      Greentech's Standing Arguments Are Unpersuasive

Greentech takes an unduly narrow view of standing, claiming that it suffered no injury until CBP enforced the certification requirement.  Resp. at 14.  According to Greentech, Commerce's certification requirement "had no bearing on Greentech until CBP informed Greentech via the Notice of Action assessing Greentech's imports AD and CVD duties under the orders on *Solar Cells from China*."  *Id.*  This argument, however, conflicts with *Abbott Laboratories* and later cases addressing justiciability of pre-enforcement challenges to agency action.  *Nat'l Org. of Veterans' Advocs., Inc.*, 981 F.3d at 1370; *Abbott Labs.*, 387 U.S. at 153–54.  "Parties are routinely permitted to bring pre-enforcement challenges without waiting until they are subject to a pending adjudication involving the rule."  *Nat'l Org. of Veterans' Advocs.*, 981 F.3d at 1379 (citing *Abbott Labs.*, 387 U.S. at 153–54).

Greentech's standing argument also contradicts its concession that CBP's actions are merely ministerial.  Greentech's standing arguments cannot be squared with its simultaneous statement that "CBP did not make any decision of its own or exercise any discretion" when enforcing Commerce's certification requirement.  Resp. at 9.  Even according to Greentech, "CBP merely read Commerce's certification requirements and instructions, observed that Greentech had not provided the required certifications, and imposed the consequence mandated by Commerce."  *Id.*  Indeed, the injury alleged by Greentech—CBP requiring cash deposits for the relevant merchandise—was the known result of noncompliance with the certification requirement.  Commerce notified importers and China-based exporters in 2012 that it would instruct CBP to "suspend all unliquidated entries for which these requirements were not met and require the posting of a cash deposit or bond on those entries equal to the {China}-wide rate in

effect at the time of the entry." *Final AD Determ. Solar Cells from China*, 77 Fed. Reg. at 63,797.

Greentech's alternative argument that its claim accrued only when CBP "asked for certifications" is particularly perplexing.  Resp. at 15.  Specifically, Greentech argues that it suffered no "adverse effect from agency action or any injury" until "CBP *asked for certifications* (and imposed duties ministerially pursuant to Commerce's instructions) nearly two years after the entries."  Resp. at 15 (emphasis added).  Yet, Greentech does not explain what independent harm it experienced from CBP's ministerial act of requesting the certifications already required by Commerce.

Moreover, to the extent Greentech argues that accrual was delayed until the date that Greentech *discovered* the certification requirement (*i.e.*, the date when CBP asked Greentech for certifications), this argument conflicts with basic rules of claim accrual.  As explained above, the statute of limitations generally "begins to run when the plaintiff has a 'complete and present cause of action.'"  *See* Mot. at 25 (quoting *Reed v. Goertz*, 143 S. Ct. 955, 961 (2023) (citing *Bay Area Laundry and Dry Cleaning Pension Trust Fund v. Ferbar Corp. of Cal.*, 522 U.S. 192, 201 (1997)).  The applicable two-year statute of limitations is not triggered upon "discovery" of a cause of action, but rather when "the cause of action first accrues."  28 U.S.C. § 2636(i).  When interpreting similar statutory language, the Supreme Court applied the usual accrual rule and rejected delaying accrual until the plaintiff discovered the cause of action.  *Gabelli v. S.E.C.*, 568 U.S. 442, 449 (2013) (interpreting a statute of limitations triggered "when the claim first accrued").

Greentech's claim would be untimely even if the applicable statute of limitations incorporated the so-called "discovery" rule (which it does not).  The "discovery rule" is an

exception to the general rule governing claim accrual that allows a claim "to accrue when the litigant first knows *or with due diligence should know* facts that will form the basis for an action." *Merck & Co. v. Reynolds*, 559 U.S. 633, 644-646 (2010) (quoting 2 Corman § 11.1.1, at 134; 37 Am. Jur. 2d, Fraud and Deceit § 347, p. 354 (2001 and Supp.2009)) (emphasis in original). The discovery rule first arose in fraud cases "where a defendant's deceptive conduct may prevent a plaintiff from even *knowing* that he or she has been defrauded," *id.* at 644, and was later codified in various contexts by "writ{ing} the word 'discovery' directly into the statute." *Id.* at 645 (citations omitted) (emphasis in original).

No such reference to "discovery" appears in the applicable statute of limitations in this case. *See* 28 U.S.C. § 2636. Even if it did, Greentech's claim would still have accrued no later than 2019 because a reasonable importer in Greentech's position would have been aware of the certification requirement. Mot. at 27-30 (citing, *e.g.*, 19 U.S.C. § 1484(a)(1)). Any reasonable importer of solar panels and modules would have ensured awareness of the antidumping and countervailing duty proceedings covering solar cells from China. The scope of the relevant orders covered all "{m}odules, laminates, and panels produced *in a third-country* from cells produced in {China}." *See, e.g.*, *Final AD Determ. Solar Cells from China*, 77 Fed. Reg. at 63,793 (emphasis added). Indeed, Commerce established third-country case numbers for merchandise assembled in third countries and covered by the order, assigning Vietnam the case number A-552-988 for the antidumping duty investigation and C-552-989 for the countervailing duty investigation. *See* Message 2158303, Defendant's Exhibit 2, ECF No. 15-2 (Sept. 7, 2023); Message 2163303, Defendant's Exhibit 3, ECF No. 15-3 (Sept. 7, 2023).

Further, any reasonable importer could access the requisite information through public sources. Commerce provided ample public notice of the certification requirement, including in

the final determinations in the relevant antidumping and countervailing duty proceedings, and in public instructions to CBP after the requirement was imposed.  Mot. at 29-30 (citations omitted); *see also* Exhibits 2-6, ECF Nos. 15-2 through 15-6 (Sept. 7, 2023).

In sum, a reasonable importer in Greentech's position would have maintained awareness of the instructions and implementation of the antidumping and countervailing duty orders on solar cells from China.  This is particularly true when Greentech's [████████████████████ ██████████████], including (1) an [████████████████████], (2) [██████ ████████████████████████████], and (3) [██████████████████ ████████████████████].  Mot. at 28 (citing, *e.g.*, Protest Mem., ECF No. 11-3 at 8; Protest Mem., ECF No. 11-13, at 62; Ltr. Ex. C, ECF No. 11-3, at 45 and 48; Greentech Ltr., ECF No. 11-3, at 22); *see also* Protest Mem., ECF No. 11-13, at 13 (referencing Greentech's [████████████████]).[1]  Greentech fails to explain how it could remain unaware of the relevant certification requirement in light of its [████████████████ ████████████████].

Greentech responds that its entry papers were sufficient to "allow CBP to assess the correct duties or collect accurate statistics pursuant to {19 U.S.C. § 1484(a)(1)(B)(i)-(ii)}."  Resp. at 17.  This misses the point that a reasonable importer of record in Greentech's position would have known about the certification requirement.  As discussed above, Greentech should have been aware of the certification requirement no later than the time of importation in 2019— more than seven years after the certification requirement was initially imposed.  There is no basis for delaying accrual of any claim challenging Commerce's certification requirement after 2019.

---

[1]  As in our motion, we cite to the PDF pages of the attachments to Greentech's amended complaint.

D.    Greentech's Remaining Arguments Confirm That Any Challenge To Commerce's
      Certification Requirement Is Untimely

None of the cases analyzed by Greentech support its argument for delaying accrual of any

claim challenging Commerce's certification requirement.  Resp. at 15-16 (citing, *e.g.*, *Reed*, 143

S. Ct. at 961; *Mitsubishi*, 44 F.3d at 975).  For example, Greentech correctly summarizes the

Supreme Court's decision in *Reed v. Goertz*, but misses the relevant point.  *See* Resp. at 15

(citing *Reed*, 143 S. Ct. at 961).  *Reed* held that the statute of limitations for challenging a state

court's denial of DNA testing did not begin to run until the conclusion of the state litigation.

*Reed*, 143 S. Ct. at 961.  Specifically, based on consideration of the "specific constitutional

right" alleged to be infringed, the claim of a procedural due process violation by the state court

was not "complete" until the state court process was complete.  *Id.*  In this case, the "specific"

action that Greentech purports to challenge is Commerce's certification requirement, which was

completed in 2012 and affected Greentech no later than 2019, when Greentech imported

merchandise subject to the requirement.

Greentech's analysis of *Mitsubishi* fares no better.  Resp. at 15 (citing *Mitsubishi*, 44 F.3d

at 975).  Greentech states that "*Mitsubishi* held that the statute of limitations began to run on the

date the automatic assessment of duties took effect," which Greentech claims supports its

argument.  *Id.* at 15-16.  Yet Greentech ignores that the automatic assessment of duties in

*Mitsubishi* was a decision by *Commerce*, not Customs.  *Mitsubishi*, 44 F.3d at 978.  Specifically,

the claim arose from *Commerce's* automatic assessment of antidumping duties, and thus accrued

on the same date that *Commerce's* automatic assessment of duties took effect.  *Id.*  Contrary to

Greentech's arguments in this case, the court of appeals did not delay accrual based on

subsequent enforcement action by CBP, such as liquidation at the assessed rate.  Applying the

same reasoning in this case, any challenge to *Commerce's* certification requirement accrues once

the certification requirement takes effect—by requiring an importer to maintain a certification for imported merchandise.  In this case, such a claim accrued no later than July 2019, when Greentech imported the relevant merchandise.  Accordingly, any claim challenging Commerce's certification requirement must be dismissed as untimely because Greentech filed its complaint more than two years after the claim accrued.

III.   Any Challenge To CBP's Application Of The Certification Requirement Lies Outside This Court's Residual Jurisdiction

As demonstrated in our motion, Greentech's amended complaint challenges decisions by CBP that lie outside this Court's residual jurisdiction.  Mot. at 15-24.  In response, Greentech contends that it challenges only the certification requirement imposed by Commerce and that all decisions by CBP are purely ministerial, such that the protest process would be manifestly inadequate to review its claims.  Resp. at 6-10.  This response simply confirms that any portions of the amended complaint challenging decisions of CBP—or challenging issues that are pending in protests and awaiting decision by CBP—must be dismissed for lack of jurisdiction.

Greentech does not dispute that this Court's residual jurisdiction does not extend to any actions that may be challenged through the protest process and for which the protest process is not "manifestly inadequate."  *See Sunpreme*, 892 F.3d at 1191.  Instead, Greentech contends that CBP's actions carrying out Commerce's certification requirement were purely ministerial and could not be protested pursuant to 28 U.S.C. § 1581(a).  Resp. at 6-10.  The problem with Greentech's argument is that it is contradicted by allegations in the amended complaint and by the nineteen protests that Greentech filed with CBP.  *See, e.g.*, Ex. 7, ECF Nos. 11-3 to 11-16 (June 27, 2023) (Greentech's protests to CBP incorporated into the amended complaint).

Had Greentech limited its amended complaint to a standalone challenge to Commerce's certification requirement, there would be no question that the protest process would be

13

manifestly inadequate to challenge that requirement.  But that is not what Greentech did.

Instead, Greentech (1) challenged the certification requirement "as applied," Am. Compl. at

¶¶ 12, 37-39; (2) asserted injury based on CBP's notice of action, *id.* at ¶ 21; and (3) attached to

its amended complaint all nineteen protests against CBP in which Greentech argued, in detail,

that CBP's liquidation of the entries at the assessed duty rates is wrong, Ex. 7, ECF Nos. 11-3 to

11-16 (June 27, 2023).  All nineteen protests remain pending and are incorporated by reference

in the amended complaint.  *See* Ex. 7, ECF Nos. 11-3 to 11-16 (June 27, 2023); *see also* Ortiz

Decl. ¶¶ 6, 11, ECF No. 15-1 (Sept. 7, 2023).  Thus, Greentech is attempting to mix and match

challenges to Commerce and challenges to CBP.  Such an approach is not permitted to invoke

this Court's residual jurisdiction.  *See, e.g.*, *Sunpreme*, 892 F.3d at 1191.

Greentech may not raise challenges in this Court that remain pending and undecided in

protests to CBP.  As demonstrated in our motion, one such issue is the country of origin of

Greentech's entries.  Mot. at 19 (citing, *e.g.*, Protest Mem., ECF No. 11-3, at 7 (June 27, 2023).[2]

Greentech's claims on this issue feature heavily in its amended complaint and in its protests to

CBP.  *Id.*  Greentech's protests remain pending and are not manifestly inadequate to address the

arguments related to CBP's application of Commerce's instructions to the facts and

circumstances of Greentech's entries.  Thus, the Court does not possess residual jurisdiction to

---

[2]  As Commerce explained, "{i}f an importer is declaring the wrong country-of-origin for imported merchandise, this is a matter appropriately dealt with by CBP."  *Final AD Determ. Solar Cells from China*, 77 Fed. Reg. at 63,793, and IDM at Cmt. 1.  In briefing to CBP, Greentech argued [███████████████████████████████████████████]
Protest Mem., ECF No. 11-3, at 8.

Additionally, as demonstrated in our motion, Greentech's amended complaint also challenges CBP's [███████████████████████████████████████████].
Mot. at 20.  Greentech now appears to abandon this argument, stating instead that CBP did not deviate "an iota" from Commerce's instructions.  Resp. at 1.  Based on this concession, it appears that Greentech concedes that its exporter was [███████████████████████].

entertain any questions regarding whether CBP correctly assessed antidumping and countervailing duties on Greentech's entries based on Greentech's submissions to CBP.  *See TR Int'l Trading Co. v. United States*, 433 F. Supp. 3d 1329, 1341 (Ct. Int'l Trade 2020), *aff'd*, 4 F.4th 1363 (Fed. Cir. 2021) (explaining that jurisdiction pursuant to 28 U.S.C. § 1581(i) is not available when section 1581(a) would not be manifestly inadequate).

Greentech insists that it does not challenge any decision by CBP that is protestable pursuant to 19 U.S.C. § 1514.  *See, e.g.*, Resp. at 6-8.  Yet, as demonstrated by the nineteen protests incorporated within the amended complaint, Greentech challenges "the liquidation" by CBP "and the assessment of antidumping and countervailing duties on the subject merchandise." Ex. 7, ECF No. 11-3, at 7.  In this action, likewise, Greentech seeks "relief from liquidation and/or collection of duties."  Am. Compl. ¶ 1, ECF No. 11 (June 27, 2023).  Such liquidation and assessment of duties are subject to protest, pursuant to 19 U.S.C. § 1514(a)(2) and (5).  The protest process is not manifestly inadequate to resolve Greentech's challenges to CBP's liquidation and assessment of duties to the extent that Greentech's challenges are addressed to CBP's application of Commerce's instructions to Greentech's entries (rather than merely a challenge to Commerce's instructions themselves).  *See Hartford Fire Ins. Co. v. United States*, 544 F.3d 1289, 1294 (Fed. Cir. 2008) (explaining that a protest is not manifestly inadequate unless it is an "exercise in futility," "incapable of producing any result," or "useless, ineffectual, vain" (cleaned up)) (citation omitted).  Thus, Greentech's challenges to CBP's application of the certification requirement to Greentech's entries must be dismissed for lack of jurisdiction.

IV.    Greentech Has Failed To Exhaust Administrative Remedies Required For Judicial Review Of CBP Decisions

As a further basis for dismissal, fundamental principles of exhaustion prevent Greentech from basing its claims before this Court on arguments that have been presented to—but not yet

PUBLIC VERSION

decided by—CBP.  *See* Mot. at 23-24.  Decisions subject to protest before CBP are not eligible

for judicial review unless CBP denies the protest and the protester pays all "liquidated duties,

charges, or exactions."  28 U.S.C. § 2637(a).  Greentech does not dispute that it has not yet paid

any of the outstanding bills for any entries at issue in this case.  *See* Ortiz Decl. ¶ 12, ECF No.

15-1 (Sept. 7, 2023).  Nor does Greentech dispute that it has not yet responded to CBP's requests

for information relating to some of the entries subject to protest.  *See id.* at ¶¶ 9-10.  All nineteen

protests remain pending.  *Id.* at ¶ 11.  Accordingly, any challenge to CBP's application of the

certification requirement must be dismissed due to Greentech's failure to exhaust administrative

remedies.

V.  **The Certification Requirement Is Purely Remedial And Does Not Implicate The Excessive Fines Clause**

Finally, claim three should be dismissed for the additional reason that the antidumping

and countervailing duty schemes are remedial and do not implicate the Excessive Fines Clause of

the U.S. Constitution.  Claim three therefore fails to state a claim for relief.  *See* Mot. at 30-34.

In response, Greentech claims that its merchandise is not subject to the antidumping and

countervailing duty orders; that the imposition of antidumping and countervailing duties in such

a scenario is punitive, not remedial; and that the resulting "fines" are excessive.  Resp. at 18-30.

Again, Greentech is incorrect.

As an initial matter, should the Court agree with the bases for dismissal discussed above,

there would be no need to reach this alternative argument.  All of Greentech's claims—including

claim three—must fail if its challenges to actions by CBP are dismissed for lack of jurisdiction

and its challenges to Commerce's certification requirement are dismissed as untimely.

To the extent the Court nonetheless reaches the issue, claim three also fails to state a

claim upon which relief may be granted.  Our motion demonstrates that the antidumping and

countervailing duty schemes are remedial, not punitive.  Mot. at 31-32 (citing *Guangdong Wireking Housewares & Hardware Co., Ltd. v. United States*, 745 F.3d 1194, 1205 (Fed. Cir. 2014); *KYD, Inc. v. United States*, 607 F.3d 760, 767–68 (Fed. Cir. 2010) (quoting *NTN Bearing Corp. v. United States*, 74 F.3d 1204, 1208 (Fed. Cir. 1995)).  Further, Commerce has discretion when fashioning the "scope and form of an order that will effectuate the purposes of the Tariff Act and the violation found."  *Canadian Solar, Inc. v. United States*, 918 F.3d 909, 914 (Fed. Cir. 2019) (citing *Mitsubishi Elec. Corp. v. United States*, 898 F.2d 1577, 1583 (Fed. Cir. 1990)) (cleaned up).  The certification requirement at issue represents a reasonable effort to remedy the unfair trade practices found in the countervailing and antidumping duty investigations into solar cells from China.  Mot. at 32-33 & n.12 (citations omitted).

Greentech nonetheless contends that "the action taken" was not remedial when it "applies to Greentech's imports of solar cells produced in Vietnam."  Resp. at 24.  Greentech argues that "the *Solar Cells from China* Orders were imposed to remedy injuries caused by dumped and subsidized solar cells from China – not solar cells from Vietnam."  *Id.*  But Commerce reasonably determined that the certification requirement was necessary to ensure appropriate enforcement of the order.  *See, e.g.*, *Final AD Determ. Solar Cells from China*, 77 Fed. Reg. at 63,793, and IDM at Cmt. 1.  As Commerce explained when codifying its practice regarding certifications, any "additional burdens" inherent in the obligation to maintain such certifications "are directly related to the proceeding itself in which Commerce adopted the certification and relevant requirements."  Mot. at 33 (quoting *Regulations To Improve Administration and Enforcement of Antidumping and Countervailing Duty Laws*, 86 Fed. Reg. 52,300, 52,363 (Dep't of Commerce, Sept. 20, 2021)).  Consistent with this regulation, Commerce imposed the relevant certification requirement "to ensure that efforts to evade enforcement of any order imposed as a

17

result of this investigation will be identified and thwarted." *Final AD Determ. Solar Cells from China*, 77 Fed. Reg. at 63,793, and IDM at Cmt. 1.

Greentech does not argue that Commerce's concerns regarding evasion are unreasonable. Indeed, the scope of the relevant orders extends to "{m}odules, laminates, and panels *produced in a third-country* from cells produced in {China}." *See, e.g., Final AD Determ. Solar Cells from China*, 77 Fed. Reg. at 63,793 (emphasis added). Thus, the subject merchandise—solar cells from China—may be entered into the United States via modules, laminates, and panels from *any third country*. In light of this broad scope, it was reasonable for Commerce to impose a certification requirement to address concerns of evasion.

Further, the certification requirement itself is not punitive or unduly burdensome. To comply with the requirement, an importer must simply make the inquiries that would be required in exercising reasonable care to report accurate information regarding duties on solar modules or panels that may contain solar cells from China. 19 U.S.C. § 1484(a). It is also reasonable—and remedial—for Commerce to require *a Chinese exporter* to maintain a certification when claiming that its solar modules or panels do not contain solar cells from China. *See, e.g.*, *Final CVD Determ. Solar Cells from China*, 77 Fed. Reg. 63,788, and IDM at Cmt. 32 (requiring the importer and exporter "to maintain exporter certifications if the exporter" of the relevant merchandise "is located in" China). Indeed, when issuing the notice of action to Greentech, CBP determined that [███████████████████████████] *See* Ex. 5, ECF No. 11-2 at 65 (June 27, 2023) (emphasis added). Notably, Greentech concedes that CBP did not deviate "an iota" from Commerce's instructions. Resp. at 1. Accordingly, requiring importer

and exporter certifications in this case is rationally connected to the well-established remedial purpose of implementing the antidumping and countervailing duty laws.[3]

Greentech relies on the Supreme Court's decision in *United States v. Bajakajian*, 524 U.S. 321, 328 (1997), in arguing that the purpose of deterrence "has traditionally been viewed as a goal of punishment." Resp. at 25. However, *Bajakajian* is distinguishable from this case because it involves forfeiture arising from a criminal conviction—which is plainly punitive. The Court in *Bajakajian* explained that it had "little trouble concluding that the forfeiture of currency" at issue "constitutes punishment." *Bajakajian*, 524 U.S. at 328. The statute in *Bajakajian* directed "forfeiture as an additional sanction when imposing sentence on a person convicted of a willful violation" of a reporting requirement. *Id.* (cleaned up). "The forfeiture is thus imposed at the culmination of a criminal proceeding and requires conviction of an underlying felony, and it cannot be imposed upon an innocent owner of unreported currency, but only upon a person who has himself been convicted" of a reporting violation. *Id.*

The decision in *Bajakajian* distinguished forfeitures effected under other customs statutes that "were not considered at the founding to be punishment for an offense." *Id.* at 340-341; *see also id.* at 341 (citing, *e.g.*, *Stockwell v. United States*, 13 Wall. 531, 20 L.Ed. 491 (1871). Such "early monetary forfeitures . . . were considered not as punishment for an offense, but rather as serving the *remedial purpose* of reimbursing the Government for the losses accruing from the evasion of customs duties." *Id.* at 342 (emphasis added). In this case, similarly, the certification requirement serves the remedial purpose of protecting against evasion of antidumping and

---

[3] Greentech also argues it is "undisputed" that the relevant antidumping and countervailing duty orders do not apply to its merchandise. Resp. at 19. However, this argument is premature, given that the issue has been presented to CBP in the nineteen pending protests and not yet decided. *See, e.g.*, Att. II, ECF No. 11-3, at 18-30 (June 27, 2023). Further, as discussed above, Greentech has failed to exhaust administrative remedies on this issue.

countervailing duty orders.  *See, e.g.*, *Final AD Determ. Solar Cells from China*, 77 Fed. Reg. at

63,793, and IDM at Cmt. 1.

Finally, Greentech claims that the consequence of failing to comply with this remedial

requirement is too harsh, stating that the duty amount was nearly [███████████████]

the value of the imported merchandise.  *See* Resp. at 2, 26-30.  Because the requirement is

remedial, however, the Eighth Amendment does not require a balancing analysis.  *See Austin v.*

*United States*, 509 U.S. 602, 607-609 (1993) (explaining that the Excessive Fines Claims applies

only to punitive actions).  Moreover, *Bajakajian* details the history of remedial forfeitures that

were proportioned to the values of the goods involved, including examples of "double the value

of the goods."  *Bajakajian*, 524 U.S. at 341 (citing *Stockwell*, 13 Wall. 531; Act of Mar. 3, 1823,

ch. 58, § 2, 3 Stat. 781–782).  Such forfeitures were still considered remedial.  *Id.*  In this case,

similarly, failing to maintain the certification results in paying cash deposits for antidumping and

countervailing duties.  This is a reasonable outcome in light of the underlying concern of

evasion.  As in *Stockwell*, therefore, both the requirement and resulting consequence are

remedial.  Accordingly, even taking all well-pleaded allegations in the amended complaint as

true, Greentech fails to show that the certification requirement is a punitive measure subject to

the Excessive Fines Clause.

CONCLUSION

For these reasons, we respectfully request that the Court dismiss Greentech's complaint.

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

OF COUNSEL:

PATRICIA M. MCCARTHY
Director

SPENCER NEFF
Attorney
U.S. Department of Commerce
Office of Chief Counsel for Trade
Enforcement & Compliance

/s/ Reginald T. Blades, Jr.
REGINALD T. BLADES, JR.
Assistant Director

ALEXANDRA KHREBTUKOVA
Senior Attorney
U.S. Customs and Border Protection
Office of the Chief Counsel
International Trade Litigation

/s/ Emma E. Bond
EMMA E. BOND
U.S. Department of Justice
Commercial Litigation Branch - Civil
Division
P.O. Box 480
Ben Franklin Station
Washington, DC 20044
Tel: (202) 305-2034

November 16, 2023

*Attorneys for Defendant*

## **CERTIFICATE OF COMPLIANCE**

Pursuant to Chambers Procedures 2(B)(1) and (2), I hereby certify that the attached

REPLY IN SUPPORT OF MOTION TO DISMISS contains 6,177 words, according to the

word-count function of the word processing system used to prepare this brief (Microsoft Office

for Microsoft 365).

Dated: November 16, 2023                       /s/ Emma E. Bond
                                               Emma E. Bond