Slip Op. 24-69

## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| GREENTECH ENERGY SOLUTIONS, INC., | |
| Plaintiff, | Before: Mark A. Barnett, Chief Judge |
| v. | Court No. 23-00118 |
| UNITED STATES, | **PUBLIC VERSION** |
| Defendant. | |

### OPINION AND ORDER

[Granting Defendant's motion to dismiss for lack of subject-matter jurisdiction.]

Dated: June 10, 2024

Mark B. Lehnardt, Law Office of David L. Simon, PLLC, of Washington, DC, argued for Plaintiff Greentech Energy Solutions, Inc.

Emma E. Bond, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, DC, argued for Defendant United States. Also on the brief were Brian M. Boynton, Principal Deputy Assistant Attorney General, Patricia M. McCarthy, Director, and Reginald T. Blades, Jr., Assistant Director. Of counsel on the brief were Spencer Neff, Attorney, Office of the Chief Counsel for Trade Enforcement & Compliance, U.S. Department of Commerce, and Alexandra Khrebtukova, Senior Attorney, Office of the Chief Counsel for International Trade Litigation, U.S. Customs and Border Protection.

Barnett, Chief Judge: This case involves the U.S. Department of Commerce's

("Commerce") decision in 2012 to impose ongoing certification requirements on

importers of solar modules that contain solar cells produced in countries other than the

People's Republic of China ("the PRC" or "China"). U.S. Customs and Border

Protection ("CBP") implements the certification requirements at Commerce's direction.

Consequently, this case also involves actions taken by CBP to suspend liquidation and collect cash deposits from noncompliant importers, such as Plaintiff, and, thereafter, to liquidate entries inclusive of antidumping ("AD") and countervailing ("CVD") duties. For its claims, Plaintiff Greentech Energy Solutions, Inc. ("Greentech") invokes the court's jurisdiction pursuant to 28 U.S.C. § 1581(i)(1)(B) and (D) (2018 & Supp. II 2020).[1] Confid. Am. Compl. ¶ 12, ECF No. 11.[2]

This matter is before the court following Defendant United States' ("the Government") motion to dismiss this case. Confid. Def.'s Mot. to Dismiss ("Def.'s Mot."), ECF No. 15; *see also* Confid. Def.'s Reply in Supp. of Mot. to Dismiss ("Def.'s Reply"), ECF No. 24. The Government seeks dismissal for lack of subject-matter jurisdiction pursuant to United States Court of International Trade ("USCIT") Rule 12(b)(1), or, in the alternative, for failure to state a claim pursuant to USCIT Rule 12(b)(6). Def.'s Mot. at 1, 14–15. Greentech opposes the Government's motion. Confid. Pl. [Greentech's] Resp. to Def.'s Mot. to Dismiss ("Pl.'s Resp."), ECF No. 20.

For the following reasons, the court finds that Greentech raises issues that may adequately be addressed in the protests pending before CBP and, thus, has a remedy pursuant to 28 U.S.C. § 1581(a). Accordingly, section 1581(i) jurisdiction is unavailable, and this action will be dismissed.

---

[1] Further citations to the U.S. Code are to the 2018 edition, unless otherwise specified.
[2] The public version of the amended complaint is docketed at ECF No. 10. The court references the confidential version of the amended complaint and exhibits attached thereto, unless otherwise specified.

## BACKGROUND

### I.  Certification Requirements

In 2012, Commerce published antidumping duty and countervailing duty orders covering crystalline silicon photovoltaic cells ("CSPV cells" or "solar cells") from the PRC in 2012.  *See Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, From the People's Republic of China*, 77 Fed. Reg. 73,018 (Dep't Commerce Dec. 7, 2012) (am. final determination of sales at less than fair value, and antidumping duty order) ("*AD Order*"); *Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, From the People's Republic of China*, 77 Fed. Reg. 73,017 (Dep't Commerce Dec. 7, 2012) (countervailing duty order) ("*CVD Order*") (together, "the *AD/CVD Orders*" or, in reference to the proceeding generally, "*Solar Cells From China*").  The scope of each order covers, *inter alia*, "[CSPV cells], and modules, laminates, and panels, consisting of [CSPV cells], whether or not partially or fully assembled into other products, including, but not limited to, modules, laminates, panels and building integrated materials."  *AD Order*, 77 Fed. Reg. at 73,018; *CVD Order*, 77 Fed. Reg. at 73,017.  The *AD/CVD Orders* also cover "[m]odules, laminates, and panels produced in a third-country from cells produced in the PRC . . . ; however, modules, laminates, and panels produced in the PRC from cells produced in a third-country are not covered."  *AD Order*, 77 Fed. Reg. at 73,019; *CVD Order*, 77 Fed. Reg. at 73,017.

In the final determination underlying the *AD Order*, Commerce set forth certification requirements for importers and, as necessary, China-based exporters,[3] of solar panels or modules from third countries that do not contain solar cells produced in the PRC.  *See Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled into Modules, From the People's Republic of China*, 77 Fed. Reg. 63,791, 63,796–97 (Dep't Commerce Oct. 17, 2012) (final determination of sales at less than fair value, and aff. final determination of critical circumstances, in part) ("*AD Final*").  In an appendix to the *AD Final*, Commerce published the required certifications.  *Id.* at 63,797–98.

The simultaneously published final determination underlying the *CVD Order* did not contain or discuss the certification requirement.  *See Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled into Modules, From the People's Republic of China*, 77 Fed. Reg. 63,788, 63,791 (Dep't Commerce Oct. 17, 2012) (final aff. CVD determination and final aff. critical circumstances determination) ("*CVD Final*").  Commerce's unpublished decision memoranda accompanying the *AD Final* and *CVD Final* determinations discussed the certification requirement in response to arguments regarding the scope of the respective investigations.  *See* Issues and Decision Mem. for Solar Cells From the PRC (AD), A-570-979 (Oct. 9, 2012) at 8–9; Issues and Decision Mem. for Solar Cells From the PRC (CVD), C-570-980 (Oct. 9, 2012) at 80–81.[4]

---

[3] Subsequent references to the exporter certification requirement should be taken to mean China-based exporters.

[4] While they are not published in the Federal Register, Commerce's decision memoranda are publicly available at https://access.trade.gov/public/FRNoticesListLayout.aspx, with separate links for pre- and post-June 2021 memoranda.

In December 2012, Commerce issued public antidumping and countervailing

duty instructions to CBP addressing implementation of the certification requirements.

*See* Def.'s Mot., Ex. 5 (Message No. 2356306 (Dec. 21, 2012)) ("Final AD Instructions"),

ECF No. 15-5; Def.'s Mot., Ex. 6 (Message No. 2346303 (Dec. 11, 2012)) ("Final CVD

Instructions"), ECF No. 15-6.  Those instructions restate the requisite importer and

exporter certifications and provide additional information.

> The importer certification begins as follows:
>
> I hereby certify that I am an official of (insert name of company importing
> solar panels/modules), that I have knowledge of the facts regarding the
> importation of the solar panels/modules or other products containing solar
> panels/modules that entered under entry number(s) (insert entry
> number(s) covered by the certification), and that these solar
> panels/modules do not contain solar cells produced in the People['s]
> Republic of China.  By signing this certificate, I also hereby certify that
> (insert name of [importer company]) maintains sufficient documentation
> supporting this certification for all solar cells used to produce the solar
> panels/modules imported under the above-referenced entry number(s).  I
> understand that agents of the importer, such as brokers, are not permitted
> to make this certification.  Also, I am aware that records pertaining to this
> certification may be requested by CBP.

Final AD Instructions ¶ 3.[5]  The exporter certification is largely identical except with

respect to the last sentence reproduced above, whereby exporters must instead certify

that "records pertaining to this certification may be subject to verification by Department

of Commerce officials and I consent to verification with respect to this certification and

these records."  *Id.*  Importers or exporters, as the case may be, must also certify that

the certifications "*should* be completed at the time of the entry" or "at the time of

---

[5] Because the certifications are identical, *see* Final AD Instructions ¶ 3; Final CVD
Instructions ¶ 3, the court cites solely to the certifications in the Final AD Instructions.

shipment," respectively.  *Id.* (emphasis added).[6]  The instructions further require

importers and exporters to certify

> [t]hat failure to maintain the required certification or failure to substantiate
> the claim that the panels/modules do not contain solar cells produced in
> the People['s] Republic of China will result in suspension of all
> unliquidated entries for which these requirements were not met and the
> requirement that the importer post an AD cash deposit or, where
> applicable, a bond, on those entries equal to the PRC-wide rate in effect at
> the time of the entry and a CVD cash deposit, or where applicable, a bond
> rate equal to the all-others rate in effect at the time of the entry.

*Id.*

In the following paragraph, the instructions inform importers and exporters that

the "certifications and supporting documentation must be maintained by the parties

described above but will *only* be provided to [CBP] by the importer *at the request of*

*CBP*" and that the "documents should not be provided by the importer as part of the

entry document package, unless specifically requested by CBP."  *Id.* ¶ 4 (emphases

added).  Commerce further explained that "CBP may accept the above certifications

(and if required by CBP, supporting documentation) to establish that the merchandise is

not covered by the scope of this order."  *Id.* ¶ 6.  If an importer fails to provide CBP with

any requested certifications or documentation, "CBP is instructed to suspend all

unliquidated entries for which the certification or documentation requirements were not

---

[6] Notwithstanding the odd phrasing, the instructions provide that maintaining the
certifications is mandatory ("must") while the certifications contain the directory
("should") language regarding timing.  Final AD Instructions ¶ 3.  Specifically, the
instructions state that "[t]he importer certification *must* be completed, signed, and dated
at the time of the entry of the panels/modules" and "[t]he exporter certification *must* be
completed, signed, and dated at the time of shipment of the relevant entries."  *Id.* ¶ 5
(emphases added); *see also* Final CVD Instructions ¶ 5.

provided," and, in antidumping cases, "require the posting of a cash deposit or bond on those entries equal to the PRC-wide rate in effect at the time of entry," *id.* ¶ 6, or, for countervailing duty purposes, "require the posting of a cash deposit or bond on those entries equal to the all others rate in effect at the time of entry," Final CVD Instructions ¶ 6.[7]

This case concerns an importer that claims to have been unaware of the certification requirements and failed to provide timely-signed certifications when CBP requested them almost two years after the entries were made.

## II.  Greentech's Entries

Greentech is an importer of solar modules exported to the United States from Vietnam and which incorporate solar cells allegedly produced in Vietnam.  Am. Compl. ¶ 9.  From July 2019 through October 2019, Greentech made 19 such entries of solar modules from Vietnam ("the subject entries").  *Id.* ¶ 23.  Greentech did not maintain

---

[7] In September 2021, Commerce promulgated 19 C.F.R. § 351.228 setting forth, among other things, a new regulation regarding certification requirements.  *Regulations To Improve Admin. and Enforcement of Antidumping and Countervailing Duty Laws*, 86 Fed. Reg. 52,300, 52,362–63 (Dep't Commerce Sept. 20, 2021) (final rule) ("*Preamble*").  The regulation went into effect on October 20, 2021, after the subject entries were made.  *See id.* at 52,300.  Commerce described the new regulation as being adopted "to codify and enhance Commerce's existing authority and practice" with respect to certifications.  *Id.* at 52,302.

importer or exporter certifications (to the extent the latter were necessary) signed and

dated as of the date of entry.  *See id.* ¶¶ 26, 32.[8]

>   CBP issued two extensions of liquidation for each of the subject entries.  *See*

Confid. Def.'s Resp. to Ct. Order Regarding the Status of Entries from July 2019 to

August 2021 at 2, ECF No. 27.[9]  On June 10, 2021, CBP issued a request for

information ("RFI") to Greentech regarding two of the subject entries and in which CBP

requested "documentation to show the products imported are exempt from AD/CVD

duties or out of scope."  Am. Compl., Ex. 3, ECF No. 11-2.  CBP stated that "[s]ome of

this documentation includes but is not limited to" the importer/exporter certifications

required by Commerce and other documentation such as certificates of origin for both

the solar cells and modules as well as production and shipping records.  *Id.*, Ex. 3.

Greentech provided an importer certification dated after the RFI and additional

documentation.  *See id.* ¶¶ 26, 31; *id.*, Ex. 4, ECF No. 11-2 (email communications

---

[8] Whether the exporter certification requirement applied to the subject entries [[
                                              ]].  *See* Def.'s Mot. at 10–12.

[9] Greentech does not dispute that the extensions occurred.  Greentech, however,
characterizes the extensions as "improper" and requests the court to "nullify" the
extensions and order reliquidation without regard to AD/CVD duties.  Pl. [Greentech's]
Resp. to Def.'s Resp. to Ct. Order Regarding the Status of Entries from July 2019 to
August 2021 at 4, ECF No. 29.  The court declines to consider Greentech's request.
Greentech has neither alleged a legal or factual basis for challenging the extensions of
liquidation in its amended complaint nor established the court's jurisdiction to entertain
this newly asserted claim.  *Cf. Chemsol, LLC v. United States*, 755 F.3d 1345, 1353–54
(Fed. Cir. 2014) (explaining that challenges to CBP's final liquidation and "any interim
decisions merged therein" may be adjudicated, if at all, pursuant to the court's section
1581(a) jurisdiction).

between a CBP official and Greentech's customs broker concerning Greentech's

responses to the RFI).[10]

On August 31, 2021, CBP issued a Notice of Action to Greentech.  *Id.*, Ex. 5,

ECF No. 11-2.  In the notice, CBP explained that it was suspending liquidation of the

subject entries and requiring cash deposits at the PRC-wide rate for the *AD Order* and

the all-others rate for the *CVD Order*.  *See id.*  CBP explained that it was acting

pursuant to Commerce's instructions accompanying the agency's preliminary

antidumping and countervailing duty solar cell investigation determinations.  *See id.*

(citing Message No. 2153302 (June 1, 2012) (prelim. AD instructions), and Message

No. 2163303 (June 11, 2012) (prelim. CVD instructions)).[11]  CBP noted that Greentech

had provided certificates dated after the RFI and thus failed to provide "the proper

documents."  *Id.*  CBP stated that Greentech was free to "protest the additional duties

upon liquidation."  *Id.*  CBP subsequently issued invoices to Greentech in connection

with the AD/CVD cash deposits.  *See id.* ¶ 35.[12]  Thereafter, CBP liquidated the subject

---

[10] In one email, Greentech stated that it was unaware of the certification requirement. Am. Compl., Ex. 4 (Greentech's response to the RFI); *see also* Pl.'s Resp. at 1 ("Greentech was unaware of the certification requirement at the time of shipment and import . . . .").

[11] Commerce's preliminary AD/CVD instructions are identical in relevant respects to Commerce's final AD/CVD instructions. *Compare* Am. Compl., Ex. 2, ECF No. 11-2 (Message No. 2153302 (June 1, 2012)), *and* Def.'s Mot., Ex. 3, ECF No. 15-3 (Message No. 2163303 (June 11, 2012)), *with* Final AD Instructions, *and* Final CVD Instructions.

[12] CBP invoiced Greentech for almost [[            ]] dollars in duties.  Pl.'s Resp., Att. 1; *see also* Am. Compl., Ex. 6 (CBP's invoices to Greentech).

entries inclusive of the invoiced AD/CVD duties.  *See, e.g.*, *id.*, Ex. 7 (Part 1), ECF No.

11-3 (documenting the date of liquidation for one of the entries).[13]

On November 12, 2021, Greentech submitted a letter to CBP providing additional

information regarding the subject entries.  *Id.*, Ex. 7 (Part 1) at Att. 2.  Greentech also

protested CBP's liquidation of the subject entries and, for one protest, filed an

application for further review.  *See id.*, Ex. 7 (Parts 1–14), ECF Nos. 11-3 to 11-16

(documenting the protests); Def.'s Mot., Ex. 1 (Decl. of Merari Ortiz (Aug. 25. 2023)

("Ortiz Decl.")) ¶¶ 3–4, ECF No. 15-1.

On June 5, 2023, CBP requested additional information from Greentech

regarding two of the subject entries in order to evaluate Greentech's claimed exemption

from AD/CVD duties.  Ortiz Decl. ¶¶ 8–9.  In July 2023, Greentech provided CBP with

information regarding one entry and informed CBP that it was gathering information

regarding the second entry.  *See id.* ¶ 10.  CBP suspended action on Greentech's

protests and application for further review when Greentech commenced this case.  *See*

*id.* ¶¶ 6–7, 11; 19 U.S.C. § 1515(c).[14]

---

[13] The Government indicates that CBP liquidated the subject entries pursuant to the automatic liquidation instructions for the period covering December 1, 2018, through November 30, 2019.  *See* Def.'s Mot. at 11 (citing Def.'s Mot., Ex. 8, ECF No. 15-8 (Message No. 0062401 (Mar. 2, 2020)) ("Auto Liq. Instructions")).  Those instructions address entries covered by the *AD/CVD Orders* that were made during the period of review and as to which no review was requested.  *See* Auto Liq. Instructions ¶¶ 1–2.
[14] Section 1515(c) provides:

> If an action is commenced in the Court of International Trade that arises out of a protest or an application for further review, all administrative action pertaining to such protest or application shall terminate and any administrative action taken subsequent to the commencement of the action is null and void.

### III. Procedural History

On June 9, 2023, Greentech commenced this case through the concurrent filing

of a summons and complaint.  Summons, ECF No. 1; Compl., ECF No. 4.[15]  On June

27, 2023, Greentech filed an amended complaint to correct a typographical error.  Am.

Compl. [Redline Version], ECF No. 11-1.[16]  Greentech invokes the court's jurisdiction

pursuant to 28 U.S.C. § 1581(i) "to challenge certain instructions sent by Commerce to

CBP, as applied to Greentech."  *Id.* ¶ 12.  Greentech alleges that it was "adversely

affected or aggrieved by the actions of Commerce and CBP within the meaning of [5

U.S.C. § 702]."  *Id.* ¶ 17.

Greentech's amended complaint asserts three claims.  Count One, titled

"Commerce's Certification Provision as Applied to Greentech Is Unlawful," alleges as

follows:

> Under U.S. law, AD and CVD duties can only be imposed when
> Commerce investigates and finds the existence of dumping or
> countervailable subsidies and the U.S. International Trade Commission

---

[15] Prior to commencing this case, Greentech had "not paid any of the outstanding bills
for [the subject entries]."  Ortiz Decl. ¶ 12.

[16] During the course of this litigation, the court expressed concern with Greentech's
overly inclusive bracketing of what appeared to constitute public information in the
sealed exhibits attached to the amended complaint, resulting in overly inclusive
bracketing in the Government's confidential motion to dismiss.  *See* Order (Feb. 26,
2024), ECF No. 36; Order (Mar. 5, 2024), ECF No. 40.  In responsive filings, Greentech
has indicated that some of this information may be made public and has submitted
revised exhibits.  *See* Pl. [Greentech's] Resp. to the Ct.'s Feb. 26, 2024 Order, ECF
Nos. 38 (public), 39 (confid.); Pl. [Greentech's] Am. Resp. to the Ct.'s Mar. 5, 2024
Order, ECF Nos. 51 (confid.), 52 (public).  For ease of reference, while the court cites to
the original versions of Greentech's confidential amended complaint in ECF No. 11, the
exhibits appended thereto, and the Government's motion to dismiss in ECF No. 15, the
court accounts for Greentech's responses when identifying business proprietary
information.

investigates and finds a domestic industry has been injured or is
threatened with injury by reason of the imports from the country subject to
the investigation.

*Id.* ¶ 38 (citing 19 U.S.C. §§ 1671, 1673, *et seq.*).  Count One further alleges:

Defendant seeks to impose AD and CVD duties on solar module imports
from Vietnam even though there are no dumping, subsidy, or injury
findings pertaining to imports from that country, and no finding of
circumvention pertaining to those entries, even though Greentech
submitted documentation to CBP showing that the solar modules in
question were not subject to the AD/CVD orders on China.  The lack of a
certificate dated at the time of shipment or entry cannot alter the clear and
unambiguous requirements of U.S. law.

*Id.* ¶ 39.

Count Two, titled "Defendant's Imposition of AD/CVD Duties Based Solely on

Greentech's Failure to Provide Contemporaneously Dated Certificates, When

Greentech Submitted Ample Documentation Showing the Imports Were Not Subject to

the China AD/CVD Orders, Is Unlawful," alleges as follows:

Assuming *arguendo* Commerce could lawfully require Greentech to have
certification[s] for its imports from Vietnam, at their core, the certifications
Commerce requires are merely signed statements by the importer and
exporter that the merchandise does not contain solar cells from China.
But the commercial documentation Greentech submitted is far more
reliable and probative of the country of production and origin than a mere
self-serving statement.  Indeed, [Commerce's] instructions identify
commercial documentation to confirm the accuracy of the certifications.
Under those circumstances, Commerce's certification provision and
instructions were unlawful because they led to the imposition of AD and
CVD duties on Greentech's imports from Vietnam.

*Id.* ¶ 41.

Count Three, titled "Defendant's Fine is Excessive and Violates the Eighth

Amendment of the United States' Constitution," alleges just that—that "the penalty

Defendant seeks to collect is excessive and, thus, violates the Eighth Amendment to the

U.S. Constitution."  *Id.* ¶ 43.

By way of relief, Greentech requests the court to 1) hold unlawful Commerce's

certification requirement "as applied to Greentech's imports of solar modules from

Vietnam," or, "[i]n the alternative," hold that the imposition of AD/CVD duties is an

unconstitutional excessive fine; 2) "refund any AD or CVD deposits collected and

withdraw all requests for payment for AD or CVD duties"; 3) order the Government to

reliquidate the subject entries without regard to AD/CVD duties; and 4) grant any

additional relief deemed appropriate, including attorney fees.  *Id.* at 13.

The court heard oral argument on the Government's motion on March 20, 2024.

*See* Docket Entry, ECF No. 54.

STANDARD OF REVIEW

To adjudicate a case, a court must have subject-matter jurisdiction over the

claims presented.  *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998).

Plaintiff bears the burden of establishing subject-matter jurisdiction.  *Norsk Hydro Can.,*

*Inc. v. United States*, 472 F.3d 1347, 1355 (Fed. Cir. 2006).  The scope of section

1581(i) jurisdiction "is strictly limited" in order to "preserve[ ] the congressionally

mandated procedures and safeguards provided in the other subsections."  *Erwin Hymer*

*Grp. N. Am., Inc. v. United States*, 930 F.3d 1370, 1374 (Fed. Cir. 2019) (alteration in

original) (citations omitted).  Thus, when the plaintiff asserts jurisdiction pursuant to 28

U.S.C. § 1581(i), it "bears the burden of showing that another subsection is either unavailable or manifestly inadequate."  *Id.* at 1375.

Because the pending motion to dismiss rests on the availability of jurisdiction pursuant to another subsection, and therefore challenges the existence of jurisdiction, "the factual allegations in the complaint are not controlling and only uncontroverted factual allegations are accepted as true."  *Shoshone Indian Tribe of Wind River Rsrv. v. United States*, 672 F.3d 1021, 1030 (Fed. Cir. 2012).

DISCUSSION

### I.  Legal Framework

"Subject matter jurisdiction is a threshold inquiry," without which the court may not reach the merits of Defendant's arguments for dismissal for failure to state a claim. *United States v. Robert E. Landweer & Co.*, 36 CIT 200, 202, 816 F. Supp. 2d 1364, 1367 (2012).  The USCIT, like all federal courts, is a "court[] of limited jurisdiction marked out by Congress."  *Norcal/Crosetti Foods, Inc. v. United States*, 963 F.2d 356, 358 (Fed. Cir. 1992) (quoting *Aldinger v. Howard*, 427 U.S. 1, 15 (1976)).  The court's jurisdiction is governed by 28 U.S.C. §§ 1581 and 1582.  *See id.*

Relevant here, section 1581(a) grants the court jurisdiction to review a denied protest.  28 U.S.C. § 1581(a); 19 U.S.C. § 1515.  Section 1515 governs CBP's review of protests filed under 19 U.S.C. § 1514.  19 U.S.C. § 1515(a).  Section 1514(a), in turn,

sets forth the exclusive list of CBP decisions that are subject to protest.  19 U.S.C.

§ 1514(a)(1)–(7).[17]

Section 1581(i)(1) grants the court jurisdiction to entertain "any civil action

commenced against the United States, its agencies, or its officers, that arises out of any

law of the United States providing for— . . . (B) tariffs, duties, fees, or other taxes on the

importation of merchandise for reasons other than the raising of revenue," and "(D)

administration and enforcement with respect to the matters referred to in subparagraphs

---

[17] Section 1514(a) of Title 19 states, with exceptions not relevant here, that

> any clerical error, mistake of fact, or other inadvertence, whether or not
> resulting from or contained in an electronic transmission, adverse to the
> importer, in any entry, liquidation, or reliquidation, and, decisions of the
> Customs Service, including the legality of all orders and findings entering
> into the same, as to--
> . . .
>
>> (2) the classification and rate and amount of duties chargeable;
>> (3) all charges or exactions of whatever character within the
>> jurisdiction of the Secretary of the Treasury;
>
> . . .
>
>> (5) the liquidation or reliquidation of an entry, or reconciliation as to
>> the issues contained therein, or any modification thereof, including
>> the liquidation of an entry, pursuant to either section 1500 of this
>> title or section 1504 of this title;
>
> . . .
>
> shall be final and conclusive upon all persons (including the United States
> and any officer thereof) unless a protest is filed in accordance with this
> section, or unless a civil action contesting the denial of a protest, in whole
> or in part, is commenced in the United States Court of International
> Trade . . . .

(A) through (C) of this paragraph and subsections (a)–(h) of this section." 28 U.S.C.
§ 1581(i)(1)(B), (D).

It is well settled that "[a] party may not expand a court's jurisdiction by creative
pleading." *Norsk Hydro*, 472 F.3d at 1355. Instead, the court must "look to the true
nature of the action . . . in determining jurisdiction of the appeal." *Id.* (citation omitted).
Relevant to that inquiry is an understanding of the relief that a plaintiff seeks. *See
Sunpreme Inc. v. United States*, 892 F.3d 1186, 1193 (Fed. Cir. 2018) (explaining that
the plaintiff's requested relief is "associated with a scope ruling determination" that may
be judicially reviewable pursuant to 28 U.S.C. § 1581(c) such that the plaintiff could not
invoke 28 U.S.C. § 1581(i)).

**II. Parties' Contentions**

The Government contends that Greentech's challenge to "Commerce's
certification requirement *as applied* to Greentech" may only be raised pursuant to 28
U.S.C. § 1581(a) following any denial of Greentech's protests. Def.'s Mot. at 18
(emphasis added) (quoting Am. Compl. ¶ 36); *see also id.* at 23–24 (arguing that
Greentech has failed to exhaust its protest procedures). Reading Greentech's
amended complaint primarily to challenge certain actions taken, or findings made, by
CBP, *see id.* at 19–20, Defendant asserts that Greentech has not established that 28
U.S.C. § 1581(a) jurisdiction is manifestly inadequate to resolve those claims, *id.* at 22.
The Government avers that "Congress has established separate statutory roles for CBP
and Commerce in administering and enforcing the antidumping and countervailing duty

scheme" with corresponding "separate methods for challenging CBP's and Commerce's respective decisions."  *Id.*

The Government further contends that it does not presently "dispute that Greentech could invoke section 1581(i) residual jurisdiction to challenge Commerce's certification requirement imposed in the final determinations, to the extent that Greentech was not—*and could not have been*—an interested party to the investigations in which Commerce issued that requirement."  *Id.* at 24 n.10.[18]  The Government argues, however, that "Greentech has not pursued a standalone challenge" to Commerce's certification requirement and that any such challenge "would be untimely."  *Id.*  In connection with this argument, the Government asserts that CBP acts in a "ministerial" capacity when implementing Commerce's instructions but that "any injury associated with CBP's application of the certification requirement—and ultimate liquidation—must be raised (if at all) pursuant to 28 U.S.C. § 1581(a)."  *Id.* at 27.

Characterizing the Government's statement that CBP acts ministerially in carrying out Commerce's instructions as a concession, Pl.'s Resp. at 9, Greentech contends that 28 U.S.C. § 1581(a) jurisdiction is unavailable to resolve the pending claims, *id.* at 5–9.  Greentech further asserts that, in this case, it seeks to challenge Commerce's authority to instruct CBP to apply the *AD/CVD Orders* to solar modules

---

[18] Greentech argues at length that jurisdiction pursuant to 28 U.S.C. § 1581(c) is not, and was not, available to Greentech to challenge Commerce's certification requirement. Pl.'s Resp. at 10–13.  The Government does not presently dispute this point.  Def.'s Mot. at 24 n.10; Def.'s Reply at 5.

that incorporate non-Chinese origin solar cells.  *See id.* at 1.  Rather than "a run-of-the-mill challenge to a routine CBP decision," Greentech contends, "this case is one of first impression" that raises the question "whether Commerce exceeded its authority" when it imposed the certification requirement.  *Id.* at 2.

In its reply brief, the Government contends that any challenge to Commerce's certification requirement must be dismissed as untimely and any challenge to CBP's application of the certification requirement must be dismissed for lack of subject-matter jurisdiction.  Def.'s Reply at 5–15.

### III. Analysis

The court begins by ascertaining the true nature of Greentech's action and whether the requested relief may instead be obtained pursuant to 28 U.S.C. § 1581(a).  *See Sunpreme*, 892 F.3d at 1193; *Norsk Hydro*, 472 F.3d at 1355.

Greentech's amended complaint contains a mix of factual allegations and legal conclusions regarding Commerce's imposition of the certification requirements and CBP's application of those requirements to Greentech.  *See, e.g.*, Am. Compl. ¶ 3 (alleging that AD/CVD duties "cannot be collected on imports" absent affirmative dumping or subsidization and injury findings); *id.* ¶ 17 (stating that Greentech was "adversely affected or aggrieved by the *actions* of Commerce *and* CBP") (emphases added); *id.* ¶¶ 27–28 (referring to the imposition of AD/CVD duties despite Greentech's alleged nonuse of solar cells from China and stating that certifications should not have been required "[u]nder those facts"); *id.* at 11 (in Count One, referencing Commerce's

certification requirement "as applied to Greentech"); *id.* at 12 (in Count Two, referencing the imposition of duties despite Greentech's "ample documentation").

Despite the lack of clarity in the amended complaint regarding the precise nature of Greentech's legal challenge, Greentech's requested relief is clear: Greentech seeks to avoid liability for duties pursuant to the *AD/CVD Orders* in connection with the subject entries, and only those entries. *Id.* at 13 (prayer for relief). Greentech does not presently allege a facial challenge to Commerce's certification requirements or seek broader relief in the form of vacatur of the requirements as to any entity besides Plaintiff. Rather, Greentech seeks a narrow judicial holding that the "certification requirement and instructions *as applied* to [the subject entries]" are unlawful. *Id.* (emphasis added).[19] The alleged basis for that holding is specific to Greentech: the "documentation showing that the merchandise was produced [in] and exported from Vietnam." *Id.* ¶ 5. The question, then, is whether these claims may be addressed by

---

[19] Greentech characterizes its claims differently in response to the Government's motion to dismiss. There, Greentech tries to limit its claims to the allegedly unlawful action of Commerce alone. *See, e.g.*, Pl.'s Resp. at 3 ("Greentech brought this case to challenge the lawfulness of Commerce's certification requirement that CBP applied to the [subject entries].").  Referencing a requirement *that CBP applied* is different from referencing a requirement *as applied* because the latter suggests the fact-specific application of the requirement to a certain entity. *See, e.g.*, *Odyssey Logs. and Tech. Corp. v. Iancu*, 959 F.3d 1104, 1112 (Fed. Cir. 2020) (comparing a facial challenge to an as-applied challenge). Greentech has not, however, requested to further amend its complaint to set out this facial challenge with clarity and specificity. The court may not consider Greentech's characterization of its claims in its response brief as operative to the extent they differ from the allegations of the amended complaint. *See, e.g.*, *Statewide Bonding, Inc. v. U.S. Dep't Homeland Sec.*, 980 F.3d 109, 117 n.5 (D.C. Cir. 2020) ("[I]t 'is axiomatic that a complaint may not be amended by briefs in opposition to a motion to dismiss.'" (citation omitted)).

CBP such that Greentech can obtain its requested relief by concluding the protest

proceedings and, if necessary, seeking judicial review pursuant to 28 U.S.C. § 1581(a).

It is well-settled that "a protestable decision" giving rise to section 1581(a)

jurisdiction requires CBP to have "engage[d] in some sort of decision-making process."

*U.S. Shoe Corp. v. United States*, 114 F.3d 1564, 1569 (Fed. Cir. 1997), *aff'd sub nom.*

*United States v. U.S. Shoe Corp.*, 523 U.S. 360 (1998).  Ministerial actions are not

protestable because CBP "must have the 'authority to grant relief in [the] protest

action.'"  *Indus. Chems., Inc. v. United States*, 941 F.3d 1368, 1371 (Fed. Cir. 2019)

(alteration in original) (quoting *Gilda Indus., Inc. v. United States*, 446 F.3d 1271, 1276

(Fed. Cir. 2006)).  At this time, the court is unaware of any case addressing CBP's role

in connection with Commerce's certification requirements pursuant to the *AD/CVD*

*Orders*.  The court agrees with the Government, however, that Greentech's claims are

amenable to protest and, thus, section 1581(a) jurisdiction would be available to

Greentech and would not be manifestly inadequate.

The instructions at issue contemplate ministerial action by CBP, if at all, with

respect to suspending liquidation and rate advancing the relevant entries.  However,

while Plaintiff and Defendant appear to agree that CBP had no choice but to suspend

liquidation and require Greentech to post cash deposits when Greentech was unable to

produce certifications signed as of the date of importation,[20] the certification language

---

[20] During oral argument, the Government responded to the court's questions regarding
CBP's authority to make a country-of-origin determination during the protest proceeding
by suggesting that CBP had no such authority and that the lack of a certification was

set forth in paragraph three of the instructions potentially allows some leeway in the

timing requirement.  That language states that the importer signing the certification

"understand[s] that this certification *should* be completed at the time of entry, Final AD

Instructions ¶ 3 (emphasis added), where "should" may be considered "directory," not

"mandatory," *see New England Tank Indus. of N.H., Inc. v. United States*, 861 F.2d 685,

694 (Fed. Cir. 1988).  However, even if Greentech's failure in that regard required CBP

to suspend liquidation and collect cash deposits, the instructions are silent on what CBP

should do when an importer lacks timely-signed certifications but can provide

documentation potentially supporting the claimed country of origin and which, if so

proven, would demonstrate that the imported products are *not* covered by the *AD/CVD*

*Orders*.[21]

---

dispositive.  Oral Arg. 38:00–39:00, 46:00–46:20, available at https://www.cit.uscourts.gov/audio-recordings-select-public-court-proceedings (reflecting the time stamp from the recording).  The Government's statement is difficult to reconcile with its assertion that section 1581(a) jurisdiction is available to Greentech and is not manifestly inadequate to obtain the relief that Greentech seeks.  *See, e.g.*, Def.'s Mot. at 14; Oral Arg. 41:00–42:00.  Furthermore, the Government relied on the instructions to support this contention, Oral Arg. 39:50–40:15, but as discussed further in, the instructions do not speak to what CBP may do, or even should do, after suspending liquidation.  Plaintiff, for its part, relies on the notion that CBP acts ministerially when implementing Commerce's liquidation instructions.  Pl.'s Resp. at 8.  The instructions at issue here are not, however, liquidation instructions; they are cash deposit instructions.  *See* Final AD Instructions ¶ 8; Final CVD Instructions ¶ 8.

[21] Paragraphs five and six of the instructions state that the "certification *must* be completed, signed, and dated at the time of the entry of the panels/modules" and that "[i]f the importer does not provide the aforementioned required certification or documentation at [CBP's] request, CBP is instructed to suspend all unliquidated entries for which the certification or documentation requirements were not provided, and require the posting of a cash deposit on those entries."  Final AD Instructions ¶¶ 5–6 (emphasis added).  The instructions do not preclude the possibility of liquidation without regard to AD and CVD duties based on subsequently provided information.

The U.S. Supreme Court "consistently has held that some form of hearing is required before an individual is finally deprived of a property interest." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976).  "[I]mporters in antidumping [and countervailing duty] proceedings are entitled to procedural due process," *Royal Brush Mfg., Inc. v. United States*, 75 F.4ᵗʰ 1250, 1257 (Fed. Cir. 2023), which includes "the right to notice and a meaningful opportunity to be heard," *id.* at 1257 n.5 (quoting *PSC VSMPO-Avisma Corp. v. United States*, 688 F.3d 751, 761–66 (Fed. Cir. 2012)).  Relevant to this question, the Government cites to other Commerce proceedings to establish that Commerce's certification requirements are part of an existing practice.  Def.'s Mot. at 33 n.12 (citing, *inter alia*, *Sugar from Mexico*, 79 Fed. Reg. 78,044 (Dep't Commerce Dec. 29, 2014) (suspension of countervailing duty investigation); and *Low Enriched Uranium From France*, 67 Fed. Reg. 6,680 (Dep't Commerce Feb. 13, 2002) (notice of am. final determination of sales at less than fair value and antidumping duty order)).  In those proceedings, however, Commerce established certification requirements on importers or exporters of merchandise from the subject countries.  *See Sugar From Mexico*, 79 Fed. Reg. at 78,048 (requiring certifications from Mexican exporters that customers agree not to engage in prohibited circumvention activities); *Low Enriched Uranium From France*, 67 Fed. Reg. at 6,680 (requiring certifications from importers and end-users of low enriched uranium from France that the imported product meets the criteria for exclusion because it is "owned by a foreign utility end-user and imported into the United States by or for such end-user solely for [specified] purposes").  By contrast, this case involves certification requirements published in 2012 in the *Solar Cells From China*

proceeding that apply ostensibly to nonsubject merchandise imported into the United States from countries other than China.  Thus, this case implicates the procedures required before the Government may extract substantial AD/CVD duties from importers, such as Greentech, in this specific scenario.

The Government argues that the statutory obligation for Greentech to use "reasonable care" in making its entries required Greentech to familiarize itself with the *AD/CVD Orders*.  Def.'s Mot. at 27–28 (citing 19 U.S.C. § 1484(a)(1)).[22]  Plaintiff disputes this argument.  Pl.'s Resp. at 16–17.  The requirements attendant to section 1484 in these circumstances are not squarely before the court.  As such, the court need not address the Government's position that reasonable care *required* importers to review *Solar Cells From China* simply because that proceeding "cover[s] solar panels assembled *in any country* using solar cells *from China*."  Def.'s Mot. at 28 (second emphasis added).  The point here is that no agency has determined, as a factual matter, that Greentech's entries incorporated "solar cells from China."  The Government's reliance on 19 U.S.C. § 1484(a)(1) suggests that it does not consider *any* further process to be required for importers such as Greentech but offers no explanation why that position comports with principles of due process.  Thus, while noncompliance with the certification requirements may give rise to a rebuttable presumption of Chinese

---

[22] The Government also cites to the *CVD Final*.  Def.'s Mot. at 28.  That determination does not discuss the certification requirements.  *See CVD Final*, 77 Fed. Reg. 63,788.

origin solar cells, effectuated by suspension of liquidation, the Government must provide

recourse for importers to rebut that presumption.[23]

      When CBP informed Greentech via the Notice of Action of the steps taken to

suspend liquidation, CBP stated that Greentech could contest the assessment of

AD/CVD duties by protesting the liquidation.  *See* Am. Compl., Ex. 5.  Shortly thereafter,

CBP began liquidating the subject entries.  *See, e.g.*, *id.*, Ex. 7 (Part 1).[24]  CBP acted

consistent with its stated view that Greentech could contest the assessment of duties

via protest when, on June 5, 2023, as part of CBP's evaluation of the protests, CBP

requested additional information from Greentech relevant to country of origin.  Ortiz

Decl. ¶¶ 8–9.  CBP only suspended action on the protest when Greentech commenced

this case.  *See id.* ¶ 11 (citing 19 U.S.C. § 1515(c)).  Thus, it appears that CBP

reasonably intended to resolve Greentech's claims during the protest proceeding and

---

[23] The court does not disregard the Government's circumvention concerns underlying the certification requirements, particularly when the country of export has a third country case number under the *AD/CVD Orders*.  Oral Arg. 39:00–39:45.  However, an importer with knowledge (or that otherwise should know) that the solar panels it is importing from a third country incorporate Chinese solar cells would, if it made those entries as Type 01/nonsubject merchandise, risk substantial penalties pursuant to 19 U.S.C. § 1592 or an evasion determination pursuant to 19 U.S.C. § 1517, or both.  Both of those statutes require certain procedures before CBP may affirmatively determine that a violation has occurred.  *See* 19 U.S.C. §§ 1517(b), 1592(b).  The Government offers no persuasive reason why due process requires fewer protections here.

[24] Indeed, the automatic liquidation instructions that CBP apparently used here apply to entries made by firms that had notice of the opportunity to request a review of their entries for the proper ascertainment of duties and did not do so.  *See* Def.'s Mot., Ex. 8; *Antidumping or Countervailing Duty Order, Finding, or Suspended Investigation; Opportunity To Req. Admin. Review*, 84 Fed. Reg. 66,880, 66,882 (Dep't Commerce Dec. 6, 2019) (applicable to the *AD Order*); *Antidumping or Countervailing Duty Order, Finding, or Suspended Investigation; Opportunity To Req. Admin. Review*, 85 Fed. Reg. 77,431, 77,433 (Dep't Commerce Dec. 2, 2020) (applicable to the *CVD Order*).

thus provide Greentech with a bona fide opportunity to avoid liability, notwithstanding that the Government has not clearly stated that CBP had the authority to do so and, during oral argument, suggested that CBP may lack such authority.  Oral Arg. 38:00–39:00, 46:00–46:20.[25]  In any event, it may be the case that CBP erred in liquidating Greentech's entries without first consulting with Commerce about the propriety of doing so.

Commerce's recent regulation set forth in 19 C.F.R. § 351.228 is instructive regarding the procedure CBP should have followed and, indeed, may have been intending to follow.  While the regulation is not directly applicable, *see supra* note 7 (noting the effective date), Commerce has stated that 19 C.F.R. § 351.228 "merely codifies existing practice," *Preamble*, 86 Fed. Reg. at 52,363.  Thus, section 351.228 is indicative of the procedures that should have been followed here.  The regulation provides, *inter alia*:

> (b) Consequences for no provision of a certificate; provision of a false certificate.
>
> > (1) The Secretary may instruct U.S. Customs and Border Protection to suspend liquidation of entries of the importer or entries associated with the other interested party and require a cash deposit of estimated duties at the applicable rate if:

---

[25] For example, the Government argues that the protest remedy is adequate for Greentech's challenge "disput[ing] CBP's adherence to Commerce's instructions." Def.'s Mot. at 19.  It is difficult to ascertain what relief Greentech may obtain if, as the Government asserts, CBP acted ministerially in this case, *see id.* at 27.  Challenging some procedural aspect of CBP's application of the instructions to Greentech is likely of no moment if that challenge does not allow Greentech to contest the applicability of the AD/CVD duties announced in the Notice of Action.

>    (i) The importer or other interested party has not provided to
>    the Secretary or U.S. Customs and Border Protection, as
>    appropriate, the certification described under paragraph (a)
>    of this section either as required or upon request for such
>    entries; or
>
>    (ii) The importer or other interested party provided a
>    certification in accordance with paragraph (a) of this section
>    for such entries, but the certification contained materially
>    false, fictitious or fraudulent statements or representations,
>    or contained material omissions.

19 C.F.R. § 351.228(b).[26]  The regulation further provides that Commerce "may also

instruct [CBP] to assess antidumping or countervailing duties . . . at the applicable rate,"

*id.* § 351.228(b)(2), which is consistent with the notion that there must be a process for

demonstrating, in appropriate circumstances, nonapplication of antidumping or

countervailing duties, beyond the certification requirement itself.

      In response to concerns that the regulation is redundant or infringes on CBP's

existing authority, or could lead to "opposing or contradictory conclusions" when "both

CBP and Commerce investigate certifications," Commerce stated that although "CBP

has its own independent authority to address import documentation related to

negligence, gross negligence, or fraud," the "enforcement of the AD/CVD laws,

including taking steps to prevent evasion and circumvention of AD and CVD orders by

producers, exporters, and importers, is well within Commerce's authority."  *Preamble*,

---

[26] Paragraph (a) of the regulation allows Commerce to determine "that an importer or
other interested party shall . . . [m]aintain a certification for entries of merchandise into the
. . . United States"; "[p]rovide a certification by electronic means at the time of entry
or entry summary"; or "[o]therwise *demonstrate compliance* with a certification
requirement as determined by [Commerce], in consultation with [CBP]."  19 C.F.R.
§ 351.228(a) (emphasis added).

86 Fed. Reg. at 52,364.  Commerce also stated that "a formal finding by CBP [is not]

required for Commerce to determine, within its own authority, that [a] certification is

deficient and unreliable," and that "[w]hether a certification contains 'material' or

'fraudulent' information is a determination that would be made by Commerce pursuant

to its own authority and consideration of the normal meaning of those terms (although

determinations by other agencies may be informative)."  *Id.*  Accordingly, when

promulgating the regulation, Commerce maintained for itself an ongoing role in

resolving issues that arise when dealing with compliance with the certification

requirements.[27]

    Most relevant here, this role is reflected in subparagraph two of the regulation,

which addresses the consequences for noncompliance.  In addition to instructing CBP

to suspend liquidation and collect cash deposits when an "importer or other interested

party" fails to provide certifications or provides certifications containing "materially false,

fictitious or fraudulent statements or representations," 19 C.F.R. § 351.228(b)(1)(i)–(ii),

the regulation states that, "[u]nder paragraph (b)(1)(i) or (ii) of this section, [Commerce]

may also instruct [CBP] to assess antidumping or countervailing duties, as the case

may be, at the applicable rate," *id.* § 351.228(b)(2).  The regulation thus suggests that,

when presented with noncompliance, Commerce will determine whether to instruct CBP

---

[27] This role is reflected in the instructions at issue here, which state that "records
pertaining to [the exporter's] certification may be subject to verification by
*Department of Commerce officials*."  Final AD Instructions ¶ 3 (emphasis added)
(exporter certification).  That language suggests that Commerce is the agency with the
authority to decide whether an exporter has adequately supported its certification.

to liquidate the relevant entries inclusive of AD/CVD duties and, thus, that decision is

not CBP's to make absent consultation with, or involvement by, Commerce.  While, in

this case, it is too late for CBP to remedy any missteps that occurred before

liquidation,[28] CBP may, indeed must, work in concert with Commerce to consider all

relevant information in the course of resolving Greentech's protests.

It is well-settled that section 1581(i) generally "may not be invoked when

jurisdiction under another subsection of [section] 1581 is or could have been available."

*Sunpreme*, 892 F.3d at 1191.  Because the court finds that section 1581(a) jurisdiction

is available to Greentech and is not manifestly inadequate, the court lacks section

1581(i) jurisdiction with respect to Counts One and Two of Greentech's amended

complaint.

Count Three will also be dismissed.  Relief pursuant to Count Three was

requested in the alternative.  *See* Am. Compl. at 13.  Regarding the underlying claim,

the Government contends that, "consistent with the overall antidumping and

countervailing duty scheme, the certification requirement is solely remedial in nature"

and therefore the Excessive Fines Clause of the Eighth Amendment does not apply.

Def.'s Mot. at 34; *see also* Def.'s Reply at 19–20 (arguing that "the certification

requirement serves the remedial purpose of protecting against evasion of antidumping

---

[28] Liquidation is "the final computation or ascertainment of duties."  19 C.F.R. § 159.1.
While the finality of liquidation may be forestalled by protesting the liquidation and
commencing a civil action before the USCIT, *see* 19 U.S.C. § 1514(a), liquidation
represents the "final challengeable event" in the life of an entry, *Chemsol*, 755 F.3d at
1350 (citations omitted).

and countervailing duty orders"); U.S. Const. amend. VIII (prohibiting the imposition of excessive fines).  Greentech contends that its claim must proceed because the subject entries were of Vietnamese origin, the duties at issue are punitive, not remedial, and the amount of duties imposed are disproportional to the offense of not having timely-signed certifications.  Pl.'s Resp. at 19–29.

Insofar as Greentech may obtain the relief associated with Counts One and Two via the opportunity to demonstrate nonliability for AD/CVD duties, Count Three seeks no additional relief.  As best the court can ascertain, Count Three seeks relief in the event the Government seeks to impose AD/CVD duties on Greentech based solely on the missing or untimely certification(s) and without any evaluation of the documentation that Greentech has submitted, or presumably will submit, when protest proceedings resume. *See* Am. Compl. ¶¶ 43–44; Ortiz Decl. ¶ 10 (noting that Greentech was still compiling information requested by CBP when CBP suspended action on the protests).

To that end, the justiciability doctrine of ripeness "considers whether 'further factual development would significantly advance [the court's] ability to deal with the legal issues presented' and whether 'the complained-of conduct has an "immediate and substantial impact" on the plaintiff.'"  *Sandoz Inc. v. Amgen Inc.*, 773 F.3d 1274, 1278 (Fed. Cir. 2014) (alteration in original) (citations omitted).  Further development is required here before Greentech can allege the facts necessary to support this claim.

Greentech makes no allegation that the duties assessed at liquidation rested on violations of the statutory scheme governing AD/CVD duties.   Greentech has acknowledged the absence of an Eighth Amendment violation when duties are lawfully

determined.  Oral Arg. 1:07:30–1:08:00.  That principle was recently affirmed by the Federal Circuit, which noted that "Commerce could typically dispose of [this] constitutional issue by reviewing the rates for statutory compliance (i.e., finding the rates not excessive)."  *Rimco Inc. v. United States*, 98 F.4th 1046, 1054 (Fed. Cir. 2024).[29] The issue here, however, is whether the Government may impose those duties based not on a factual determination that Greentech's entries contained Chinese solar cells, but only on Greentech's failure to submit timely-signed certifications.  Because further administrative proceedings relevant to this question will take place, the court finds that Count Three must be dismissed as unripe.[30]  *See Sandoz*, 773 F.3d at 1278 ("A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." (citation omitted)).

### CONCLUSION AND ORDER

For the foregoing reasons, the court **GRANTS** Defendant's motion to dismiss for lack of jurisdiction.  Judgment will enter accordingly.

/s/      Mark A. Barnett
Mark A. Barnett, Chief Judge

Dated: June 10, 2024
         New York, New York

---

[29] The *Rimco* court left open the possibility for "a scenario, however unlikely, where a calculated rate might comply with statutory reasonableness but nonetheless violate the excessive fines component of the Eighth Amendment."  98 F.4th at 1055.  The appellate court explained, however, that "administrative exhaustion would still be required."  *Id.*
[30] The court declines to address whether Greentech will be able to allege an Eighth Amendment violation at the conclusion of the protest proceedings or what the appropriate jurisdictional basis would be for such a claim.